Jane HAUSMAN and Karen Wright, Plaintiffs-Appellants-Petitioners,

v.

ST. CROIX CARE CENTER, Defendant-Respondent.

Supreme Court

*No. 96–0866. Oral argument October 8, 1997.—Decided December 19, 1997.*

(Also reported in 571 N.W.2d 393.)

For the plaintiffs-appellants-petitioners there were briefs by *Carol N. Skinner, Peter M. Reinhardt* and *Bakke Norman, S.C.*, New Richmond and oral argument by *Carol N. Skinner*.

For the defendants-respondents there was a brief by *Maureen A. Molony, John M. Loomis, Katherine L. Williams*, and *Beck, Chaet, Loomis, Molony & Bamberger, S.C.*, Milwaukee and oral argument by *Katherine L. Williams*.

Amicus curiae brief was filed by *William P. Donaldson* for the Wisconsin Board on Aging and Long Term Care, Madison.

Amicus curiae was filed by *Betsy J. Abramson* for the Elder Law Center of the Coalition of Wisconsin Aging Groups, Madison.

Amicus curiae was filed by *Timothy G. Costello, Mark A. Johnson,* and *Krukowski & Costello, S.C.*, Milwaukee for the Wisconsin Manufacturers & Commerce.

¶ 1.  ANN WALSH BRADLEY, J.  Plaintiffs Jane Hausman and Karen Wright seek review of a published court of appeals' decision affirming a circuit court order that dismissed the plaintiffs' suit for failure to state a claim upon which relief could be granted.[1] The plaintiffs, discharged employees of the defendant, St. Croix Care Center, Inc. (St. Croix), first assert that the facts as alleged conform to the established public policy exception to the employment-at-will doctrine. In the alternative, the plaintiffs ask this court to broaden the public policy exception. The plaintiffs also argue that Wis. Stat. § 50.07(1)(e) (1993–94)[2] provides an implied private right of action for retaliatory discharge.

¶ 2.  We reject the plaintiffs' claims that the facts as alleged fit within the existing public policy exception and we decline to adopt a broad whistle-blower exception. However, we recognize that the plaintiffs' compliance with an affirmative legal duty requiring

---

[1] *See Hausman v. St. Croix Care Center*, 207 Wis. 2d 402, 558 N.W.2d 893 (Ct. App. 1996) (affirming order of Circuit Court for Pierce County, Robert W. Wing, Judge).

[2] Unless otherwise indicated, all future statutory references are to the 1993–94 volumes.

them to take action to prevent abuse or neglect of nursing home residents comports with a well-defined public policy and the rationale of our public policy exception to the employment-at-will doctrine. Accordingly, we apply the public policy exception to the allegations here and conclude that the trial court erred in granting St. Croix's motion to dismiss. Therefore, we reverse the decision of the court of appeals.

¶ 3.   St. Croix, a private nursing home facility in St. Croix County, Wisconsin, employed the plaintiffs, Jane Hausman and Karen Wright. Wright, a licensed nurse, worked as St. Croix's Resident Care Coordinator, while Hausman, a licensed social worker, was the Director of Social Services at St. Croix. Both women were also members of a five-person interdisciplinary care team at St. Croix charged with ensuring that St. Croix provided appropriate and sufficient care to its residents.

¶ 4.   In late 1992, Hausman, Wright, and two other members of the care team became concerned that certain residents of St. Croix's nursing home were not receiving appropriate care. These concerns included: patients falling from beds and suffering injuries, staff members failing to respond to residents' calls for help, disrespectful treatment of patients, improper diets, and a failure by St. Croix to investigate injuries to residents. Hausman and Wright approached St. Croix's director of nursing, also a member of the interdisciplinary care team, about these concerns.[3] No action was taken.

---

[3] Wis. Stat. § 940.295(3) states in pertinent part:

ABUSE AND NEGLECT; PENALTIES. (a) Any person in charge of or employed in any facility or program. . .who does any of the following, or who knowingly permits another person to do so, may be penalized under par. (b):

¶ 5. Undeterred by the nursing home's lack of reaction, Hausman and Wright approached St. Croix's administrators in 1993. Once again, St. Croix failed to act to alleviate Hausman and Wright's fears of abuse and neglect. Hausman and Wright then moved beyond filing internal complaints. Instead, the plaintiffs contacted the Regional Ombudsman, the state officer entrusted by statute with the duty of identifying, investigating, and resolving complaints made by or on behalf of providers of nursing home care.[4] After an investigation, the Regional Ombudsman concluded that "areas of concern" existed at St. Croix. Hausman asked the Regional Ombudsman to request an investigation of St. Croix by the Bureau of Quality Compliance. Hausman also contacted the relatives of some of St. Croix's residents and ultimately approached St. Croix's Board of Directors.

---

    1.  Intentionally abuses or intentionally neglects a patient or resident.

    2.  Recklessly abuses or recklessly neglects a patient or resident.

    Punishment for failure to act, be it through reporting or taking some other form of action, ranges from a Class B misdemeanor to a Class D felony.

    [4] 42 U.S.C. § 3058(g) declares that the Regional Ombudsman shall investigate and resolve complaints that are made by or on behalf of residents that relate to actions or omissions that adversely affect the health, safety, welfare or rights of nursing home residents.

    In addition, Wis. Stat. § 16.009(4)(a) states in pertinent part:

> The [Board of Aging and Long Term Care] shall operate the office [of the Long Term Care Ombudsman] in order to carry out the requirements of the long-term care ombudsman program under 42 U.S.C. 3027(a)(12)(A) and 42 U.S.C. 3058f to 3058h.

¶ 6. The Bureau of Quality Compliance investigated St. Croix's facilities beginning in July 1993. The Bureau concluded its investigation without issuing any citations, and without interviewing any of the four members of the interdisciplinary team who brought forward concerns of alleged abuse or neglect. The Board of Directors of St. Croix also took no action to address the plaintiffs' concerns.

¶ 7. St. Croix suspended Hausman in late June 1993, pending investigation of a disciplinary matter involving a nursing assistant. She was terminated by St. Croix two weeks later, allegedly for unprofessional conduct and breach of confidence. She was never interviewed about the disciplinary matter. St. Croix also terminated Wright three months later, on ten minutes notice, claiming budgetary constraints.

¶ 8. Hausman and Wright filed suit in the circuit court, alleging a private right of action under Wis. Stat. § 50.07,[5] wrongful termination through breach of public policy, negligent misrepresentation, and strict responsibility for misrepresentation. The circuit court dismissed the plaintiffs' suit for failure to state a claim upon which relief could be granted.[6]

---

[5] Wis. Stat. § 50.07 states in pertinent part:

(1) No person may:

. . . .

(e) Intentionally retaliate or discriminate against any resident or employe for contacting or providing information to any state official, or for initiating, participating in, or testifying in an action for any remedy authorized under this subchapter.

(2) Violators of this section may be imprisoned up to 6 months or fined no more than $1,000 or both for each violation.

[6] The plaintiffs also filed a complaint with the Department of Industry, Labor and Job Development, pursuant to Wis. Stat. § 46.90. Wis. Stat. § 46.90(4) states in pertinent part:

¶ 9.    The plaintiffs appealed. Affirming the circuit court, the court of appeals held that a private right of action does not exist under Wis. Stat. § 50.07. The court of appeals also held that the facts as alleged by the plaintiffs did not meet the requirements of Wisconsin's established wrongful discharge public policy exception and that it lacked the authority to apply the public policy exception to the plaintiffs' wrongful termination claim. Finally, the court of appeals held that the plaintiffs' allegations did not state a claim for misrepresentation.[7]

¶ 10.    Dismissal for failure to state a claim is a question of law which we determine de novo. *See Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). In conducting our analysis, we must accept as true the facts alleged in the complaint as well as all reasonable inferences to be drawn from those facts. *See id.* Accordingly, for purposes of our review, we accept as true the plaintiffs' allegations that they were terminated in retaliation for reporting their suspicions of abuse to the

---

(a) 1.    Any person may report to the county agency that he or she believes that abuse, material abuse or neglect has occurred if the person is aware of facts or circumstances that would lead a reasonable person to believe or suspect that abuse. . .has occurred.

(b) 1.    No employer may discharge or otherwise discriminate against any person for reporting in good faith under this subsection.

An administrative law judge dismissed the complaint because the plaintiffs reported their concerns to the state, instead of to a county agency. The decision was affirmed by the Labor and Industry Review Commission as well as the circuit court of Dane County, Mark J. Frankel, Judge. *See* Order, Case No. 96CV798, entered May 6, 1997.

[7] The plaintiffs do not appeal the court of appeals' dismissal of their misrepresentation claims.

Regional Ombudsman. Since the complaint is to be liberally construed, we may dismiss the claim only if it is "quite clear that under no conditions can the plaintiff recover." *Evans v. Cameron*, 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985).

¶ 11. The question of whether compliance with an affirmative legal command that causes an employee to report abuse of nursing home residents constitutes an exception to the employment-at-will doctrine is one which this court has not previously faced. To resolve this issue, we must reexamine the employment-at-will doctrine, survey the breadth of the narrow public policy exception to the doctrine, and determine whether the case at hand falls within its requirements. In the event that it does not, we must consider whether applying the public policy exception to include individuals who comply with a legal obligation to prevent abuse of nursing home residents by reporting certain information comports with our prior case law.

¶ 12. The employment-at-will doctrine is an established general tenet of workplace relations in this jurisdiction. *See Prentiss v. Ledyard*, 28 Wis. 131, 133 (1871); *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 335 N.W.2d 834 (1983). Where applicable, the doctrine generally allows an employer to discharge an employee "for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong." *Brockmeyer*, 113 Wis. 2d at 567.

¶ 13. However, the right to summarily fire an employee is not all-pervasive. In the past we have recognized that there are instances in which application of the employment-at-will rule would lead to injustice. "A wrongful discharge is actionable when the termination

clearly contravenes the public welfare and gravely violates paramount requirements of public interest." *Id.* at 573. Accordingly, "an employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.*; *see also* Wis JI—Civil 2750.

¶ 14.   The *Brockmeyer* court discovered such fundamental and well-defined public policy in constitutional and statutory provisions. *See Brockmeyer*, 113 Wis. 2d at 573. However, public policy statements that give rise to a wrongful termination action do not arise solely from explicit constitutional or legislative statements. In *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 384 N.W.2d 325 (1986), we acknowledged that a plaintiff could find public policy foundations for a wrongful termination suit in "the spirit as well as the letter" of constitutional and legislative provisions. *Winkelman v. Beloit Memorial Hosp.*, 168 Wis. 2d 12, 21, 483 N.W.2d 211 (1992) (discussing *Wandry*). Moreover, in *Winkelman*, we determined that public policy could also be evinced by an administrative rule.

¶ 15.   Cognizant of the far reaching implications of holding that an employee's termination for acting in accordance with general public policy was actionable under the wrongful discharge doctrine, we expressly limited the scope of the policy exception to the employment-at-will doctrine in *Bushko v. Miller Brewing Co.*, 134 Wis. 2d 136, 396 N.W.2d 167 (1986). In *Bushko* we concluded that a discharge of an at-will employee only invokes the public policy exception where the employee is terminated for refusing a command, instruction, or

request of the employer to violate public policy as established in existing law. *See id.* at 142; *see also Kempfer v. Automated Finishing, Inc.*, 211 Wis. 2d 100, 110–111, 564 N.W.2d 692 (1997). Accordingly, where an employee voluntarily undertakes acts consistent with public policy, "he does no more than obey the law. Such consistent action, without an employer's command to do otherwise, is merely 'praiseworthy' conduct." *Bushko*, 134 Wis. 2d at 142.

¶ 16. It is uncontested by the parties to this suit that the plaintiffs have identified a fundamental and well-defined public policy of protecting nursing home residents from abuse and neglect. This policy is demonstrated in part by Wis. Stat. § 50.07(1)(e) which prohibits a nursing home from retaliating against an employee who provides information regarding abuse or neglect to a state official, and by Wis. Stat. § 46.90(4)(b) which prohibits an employer from discharging an employee for reporting abuse or neglect of a resident to a county agency. We also find the public policy of protecting nursing home residents to be present in Wis. Stat. § 940.295(3)'s imposition of criminal penalties on workers who knowingly permit abuse or neglect to occur.

¶ 17. Accordingly, the question then becomes whether the plaintiffs can comport their claim for wrongful termination in violation of public policy with *Bushko*'s dictates that the employee must violate an express command, instruction, or request to violate that public policy. We conclude that the narrow public policy exception laid out in *Bushko* does not encompass the plaintiffs' claim. Despite counsel's attempts at oral argument to cast the facts of this case as something in the nature of an "implicit command" not to report abuse, we remain unpersuaded. While St. Croix's ter-

mination of Hausman and Wright might be viewed as an implicit command to other employees not to report abuse or neglect, such an argument does not allow the plaintiffs herein to avail themselves of the existing public policy exception as defined by *Bushko*. There was no command, request, or instruction.

¶ 18.  We are thus squarely faced with the plaintiffs' request in the alternative that we redefine the public policy exception to the employment-at-will doctrine to include actions for wrongful termination based on particular whistle-blowing activities of a discharged employee. Other jurisdictions have recognized an inclusive whistle-blower exception on the grounds that "[p]ublic policy requires that citizens in a democracy be protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare." *Palmer v. Brown*, 752 P.2d 685 (Kan. 1988); *see also Moyer v. Allen Freight Lines*, 885 P.2d 391 (Kan. App. 1994); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876 (Ill. 1981).

¶ 19.  Admittedly, adoption of such a wide-ranging whistle-blower exception would advance the public interest by encouraging employees in diverse industries to report conduct that threatens the public's health, safety, and welfare. Such a wide extension of existing law by this court, however, would be contradictory to our established precedent.

¶ 20.  We have explicitly rejected such wide-ranging application of the public policy exception to scenarios like that in *Palmer* where the terminated individual was merely engaging in praiseworthy conduct consistent with public policy, not complying with an affirmative legal obligation. *See Bushko*, 134 Wis.

2d at 145. The focus of our inquiry in the past has been not just on the public interest, but also on the valid interests presented by employers and employees. As we noted in *Brockmeyer*:

> We believe that the adoption of a narrowly circumscribed public policy exception properly balances the interests of employees, employers and the public. Employee job security interests are safeguarded against employer actions that undermine fundamental policy preferences. Employers retain sufficient flexibility to make needed personnel decisions. . . . Finally, the public is protected against frivolous lawsuits since courts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy.

*Brockmeyer*, 113 Wis. 2d at 574. Thus, we reject application of a broad whistle-blower exception.

¶ 21. However, while we refuse to adopt a broad whistle-blower exception, our examination of the public policy exception is not complete. The situation presented here is one we have not faced previously. Wisconsin law imposes an affirmative obligation upon the plaintiffs to act to prevent suspected abuse or neglect of nursing home residents. One such appropriate action under this legal obligation is to report the abuse or neglect. *See* Wis. Stat. § 940.295(3). Had the plaintiffs failed to report their concerns, they could be subject to criminal prosecution.

¶ 22. The plaintiffs' compliance with the specific legal mandate in this instance goes beyond mere "conduct [that] was praiseworthy or [conduct] that the public may derive some benefit from." *Brockmeyer*, 113 Wis. 2d at 574 (citing *Palmateer v. International Har-*

*vester Co.*, 421 N.E.2d 876, 883 (Ill. 1981)). While their actions were not in violation of a *Bushko* command, their actions were in response to a more significant legal command, one imposed by the legislature to further promote the strong public policy of protecting nursing home residents.

¶ 23. Moreover, the concerns voiced in *Brockmeyer* arguing against a broad public policy exception do not lie with respect to conduct such as that engaged in by the plaintiffs. The employer's personnel decisions are not impermissibly interfered with by a requirement that the employer not retaliate against an employee complying with the dictates of a fundamental public policy statement. It is the duty statute enacted by the legislature, not any relief for wrongful discharge attached thereto by this court, that legitimately burdens the employer. In addition, applying the public policy exception to an employee's report of nursing home resident abuse or neglect will not open every termination decision by an employer to court scrutiny. The well-defined public policy of protecting residents of nursing homes and the affirmative obligations placed upon nursing home employees are sufficiently certain to allow courts to easily identify covered cases.

¶ 24. The public is also adequately protected if an employee's compliance with a legal command is protected by the public policy exception. Because wrongful termination actions based on such an affirmative legal obligation would be easily identifiable, courts would be able to continue to screen out frivolous cases on summary judgment while still protecting well-defined public policies.

¶ 25. Finally, the interests of employees would continue to receive the same level of protection from wrongful termination. By applying the public policy

exception to the situation presented here, employees would be relieved of the onerous burden of choosing between equally destructive alternatives: report and be terminated, or fail to report and be prosecuted. Accordingly, while employees would gain an added level of protection to facilitate the public interest, the added safeguard would not extend to "merely praiseworthy conduct."

¶ 26. For these reasons, we conclude that the public policy exception to the employment-at-will doctrine may apply beyond the four corners of *Bushko*. The public policy of protecting nursing home residents from abuse is fundamental and well-defined. Where the law imposes an affirmative obligation upon an employee to prevent abuse or neglect of nursing home residents and the employee fulfills that obligation by reporting the abuse, an employer's termination of employment for fulfillment of the legal obligation exposes the employer to a wrongful termination action. In such instances, the employee may pursue a wrongful termination suit under the public policy exception regardless of whether the employer has made an initial request, command, or instruction that the reporting obligation be violated.[8]

¶ 27. Having acknowledged that a wrongful discharge claim is actionable here, we turn to consideration of the defendant's claim that a wrongful discharge action should not survive where the legislature has already provided a remedy. In *Brockmeyer*, we noted that "we are well aware that the legislature has enacted a variety of statutes to prohibit certain types of

---

[8] Because we find the plaintiffs have a claim upon which relief can be granted pursuant to the public policy exception to the employment-at-will doctrine, we do not reach the plaintiffs' claims that a private right of action exists under Wis. Stat. § 50.07.

discharges," and that "[w]here the legislature has created a statutory remedy for a wrongful discharge, that remedy is exclusive." *Brockmeyer*, 113 Wis. 2d at 576, n.17; *see also Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 59–60, 224 N.W.2d 389 (1974).

¶ 28. Pointing to this language in *Brockmeyer*, the defendant asserts that the plaintiffs' cause of action for wrongful discharge in this case is barred by Wis. Stat. 50.07(2), which punishes employers for the wrongful termination of reporting employees with up to six months in jail.[9] In the defendant's view, the legislature has entrusted the State with the duty of deterring and punishing discharges that occur due to an employee's report of neglect or abuse, so individual civil actions are inappropriate.

¶ 29. We disagree. A criminal penalty is no remedy to the terminated employee. While the State may choose to prosecute individual defendants for wrongful discharge, thus providing society with a remedy, the terminated employee who fulfilled the statutory obligation and reported suspected abuse remains just that: terminated. Absent application of the wrongful discharge public policy exception, such an individual has no recourse to regain a former position or receive redress for a wrongful termination. The criminal sanction provision of Wis. Stat. § 50.07 is a penalty levied against violating employers, not a remedy for these plaintiffs, and is thus insufficient to bar the plaintiffs' cause of action.

¶ 30. The plaintiffs' compliance with the legal command in Wis. Stat. § 940.295(3) requiring them to

---

[9] We also find no merit in the defendant's argument that we should withhold relief because a bill that addresses the statutes at issue in this case has been proposed to the legislature.

take action to prevent abuse or neglect of nursing home residents comports with the public policy exception to the employment-at-will doctrine. Moreover, absent application of the public policy exception, the plaintiffs are without remedy for wrongful termination. Accordingly, the plaintiffs have met the threshold requirement of stating a claim upon which relief can be granted and the circuit court erred in dismissing their claims.

*By the Court.*—The decision of the court of appeals is reversed.