ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff-Respondent,†

v.

Jane HAUSMAN, Defendant-Appellant,

Karen R. WRIGHT and St. Croix Care Center, Inc., Defendants.

Court of Appeals

*No. 99–1125–FT. Submitted on briefs September 7, 1999.—Decided October 5, 1999.*

(Also reported in 604 N.W.2d 908.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Carol N. Skinner* of *Bakke Norman, S.C.*, New Richmond.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William H. Leary* and *Kyle M. Thomas* of *Geraghty, O'Loughlin & Kenney, P.A.*, Saint Paul, Minnesota.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1.  PETERSON, J.   Jane Hausman appeals a summary judgment in favor of St. Paul Insurance Company finding no insurance coverage.[1] Hausman, a discharged employee of St. Croix Care Center, Inc., claims that the circuit court erred by concluding that the insurance policy provision providing coverage for St. Croix against "personal injury offense[s]," does not include injuries to employees. We agree and therefore reverse.

## FACTS

¶ 2.  St. Croix, a private nursing home facility in Prescott, Wisconsin, employed Hausman as a licensed social worker. She was the director of social services and a member of a five-person interdisciplinary care team charged with ensuring that St. Croix provided appropriate care to its residents.

¶ 3.  In mid- to late 1992, Hausman and three other members of the care team became concerned that certain residents of St. Croix were not receiving appropriate care. These concerns included patients falling from beds and suffering injuries, staff members failing to respond to residents' calls for help, disrespectful treatment of patients, improper diets and St. Croix's failure to investigate injuries to residents. Hausman approached another member of the interdisciplinary team and, eventually, St. Croix's administrators. Because no action was taken to sufficiently alleviate Hausman's concerns, she moved beyond filing internal complaints. In March of 1993, she contacted the Regional Ombudsman and, eventually, requested an investigation by the Bureau of Quality Control. St. Croix suspended Hausman in late June 1993 and ter-

---

[1] This is an expedited appeal under RULE 809.17, STATS.

minated her employment two weeks later, citing performance problems.

¶ 4.   Hausman, along with another terminated employee, filed suit in circuit court alleging, among other theories, wrongful discharge based on breach of public policy under § 50.07(1)(e), STATS.[2] The circuit court dismissed the plaintiffs' suit for failure to state a claim upon which relief could be granted. The plaintiffs appealed, and this court affirmed. *See Hausman v. St. Croix Care Ctr., Inc.*, 207 Wis. 2d 400, 558 N.W.2d 893 (Ct. App. 1996). However, the supreme court reversed and held the plaintiffs could pursue a wrongful termination suit. *See Hausman v. St. Croix Care Ctr., Inc.*, 214 Wis. 2d 655, 571 N.W.2d 393 (1997). The court reasoned that the public policy exception to the employment-at-will doctrine applied because the plaintiffs' actions merely complied with an affirmative legal duty that comports with a fundamental and well-defined public policy. *See id.* at 669, 571 N.W.2d at 398.

¶ 5.   On remand, Hausman amended her complaint to include St. Croix's general liability insurer, St. Paul, as a defendant.[3] The parties later stipulated to the dismissal of St. Paul based on Wisconsin's direct action statute, which applies only to negligence claims. Thereafter, St. Paul brought this action for declaratory judgment, seeking judicial determination that the insurance policy did not provide St. Croix coverage for Hausman's claims. On a motion for summary judgment, the circuit court agreed with St. Paul and concluded that the policy was intended to protect

---

[2] Unless otherwise stated all references to Wisconsin statutes are to the 1995–96 version.

[3] The other employee did not proceed against St. Paul because St. Paul was no longer providing insurance to St. Croix when that employee was terminated.

residents and not St. Croix employees. Hausman now appeals the summary judgment.

## STANDARD OF REVIEW

¶ 6.   We review a grant of summary judgment independently, applying the same methodology as the circuit court. *See Doyle v. Engelke*, 219 Wis. 2d 277, 283, 580 N.W.2d 245, 248 (1998). Where no material facts are in dispute, we must determine whether the moving party is entitled to judgment as a matter of law. *See id.*

¶ 7.   Our inquiry is limited to interpreting St. Paul's insurance policy and determining whether it provides coverage for Hausman's injury. The interpretation of words or clauses in an insurance policy and the determination of coverage under that policy are questions of law we review de novo. *See id.* at 283–84, 580 N.W.2d at 248. We must read the policy in an objective manner and as a reasonable insured would have understood the policy terms. *See Bertler v. Employers Ins.*, 86 Wis. 2d 13, 17, 271 N.W.2d 603, 605 (1978) (quoted source omitted).

## ANALYSIS

¶ 8.   The relevant portion of the policy states that St. Paul will pay amounts "any protected person is legally required to pay as damages for covered personal injury that: . . . is caused by a personal injury offense." The term "personal injury offense" is limited to, among other things, "[i]nterfering with the rights provided to a person by a patient's bill of rights or any similar law."

¶ 9.   Hausman contends that St. Croix interfered with her rights in both ways identified in the policy:

first, under a patient's bill of rights, § 50.09, STATS.; and, second, under a law similar to a patient's bill of rights, § 50.07(1)(e), STATS. St. Paul responds that any person provided rights by a law similar to a patient's bill of rights must by definition be a patient, not an employee. St. Paul concludes that only § 50.09 qualifies as a law similar to a patient's bill of rights and that Hausman has no rights under that statute.

¶ 10. Because we conclude that § 50.07(1)(e), STATS., disposes of the issue, we need not address whether the policy provides coverage to Hausman via § 50.09, STATS. Section 50.07(1)(e) provides that it is a prohibited act to:

> Intentionally retaliate or discriminate against any *resident or employe* for contacting or providing information to any state official, or for initiating, participating in, or testifying in an action for any remedy authorized under this subchapter. (Emphasis added.)

We conclude that this section is a law similar to a patient's bill of rights.

¶ 11. The plain language of § 50.07(1)(e), STATS., makes it a prohibited act to intentionally retaliate against either residents or employees for contacting or providing information to any state official. Therefore, the subsection protects both residents and employees. The overriding purpose of protecting both is to facilitate the patients' rights under the entire subchapter.

¶ 12. The importance of protecting employees who safeguard patients' rights was recognized by the supreme court when it stated that:

> [T]he plaintiffs have identified a fundamental and well-defined public policy of protecting nursing home residents from abuse and neglect. *This policy*

*is demonstrated in part by Wis. Stat. § 50.07(1)(e) which prohibits a nursing home from retaliating against an employee who provides information regarding abuse or neglect to a state official . . . .*

*Hausman*, 214 Wis. 2d at 665, 571 N.W.2d at 397 (emphasis added). Protecting employees who perform their affirmative duty of reporting suspected abuse or neglect is as integral a protection for nursing home residents themselves as it is for the employees who must perform their duties. Accordingly, we are satisfied that the purposes of § 50.07(1)(e), STATS., are sufficiently similar and necessary to ensuring patients' rights as those enumerated in § 50.09, STATS. We therefore hold that § 50.07(1)(e) qualifies under the insurance policy language as a law similar to a patient's bill of rights.

¶ 13.   St. Paul further argues that even if Hausman is a person covered under its insurance policy, § 50.07(1)(e), STATS., does not provide a private cause of action for money damages.[4] St. Paul argues that an insurance policy cannot create a theory of liability, but only provides coverage for existing liability. We are not persuaded.

██

¶ 14.   We determine whether insurance coverage exists by focusing on the incident itself and not the

---

[4] The Wisconsin Supreme Court specifically declined to address this issue in the original lawsuit, stating: "[b]ecause we find the plaintiffs have a claim upon which relief can be granted pursuant to the public policy exception to the employment-at-will doctrine, we do not reach the plaintiffs' claims that a private right of action exists under Wis. Stat. § 50.07." *Hausman v. St. Croix Care Ctr., Inc.*, 214 Wis. 2d 654, 669 n.8, 571 N.W.2d 393, 398–99 n.8 (1997). We decline to address this issue for similar reasons.

31

theory of liability. *See Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 480, 329 N.W.2d 150, 155 (1983). St. Paul's policy covers damages caused by interference with Hausman's rights provided by a law similar to a patient's bill of rights. Hausman claims that St. Croix interfered with her rights under § 50.07(1)(e), STATS., and that she was damaged by that interference. St. Paul's insurance policy provides coverage for the factual incident. Hausman's legal theory of liability—wrongful discharge—is irrelevant to the question of coverage.

*By the Court.*—Judgment reversed.