ST. CROIX TRADING COMPANY/
DIRECT LOGISTICS, LLC.,
Plaintiff-Respondent,

v.

REGENT INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 2015AP1622. Submitted on briefs March 1, 2016.
—Decided May 24, 2016.*

2016 WI App 49

(Also reported in 882 N.W.2d 487.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Forrest G. Hopper* and *Robert C. Burrel* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Oakdale.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Alexander M. Jadin* and *Jerri C. Adams* of *Roeder Smith Jadin, PLLC* of Bloomington.

Before Kessler, Brennan and Brash, JJ.

¶ 1. KESSLER, J.   Regent Insurance Company (Regent) appeals an order of the circuit court vacating an appraisal award granted to its insured, St. Croix Trading Company/Direct Logistics, LLC (St. Croix). The circuit court vacated the award on the grounds that the appraisal panel failed to understand its contractually assigned task. Specifically, the circuit court found that the panel exceeded its authority by considering whether the Regent policy provided coverage for certain damaged items. We affirm.

## BACKGROUND

¶ 2.   At issue in this appeal is whether there is sufficient evidence that an appraisal panel misunderstood its task, and in turn exceeded its authority, by considering coverage in its award determination. St. Croix is the owner of a historic building located in Hudson, Wisconsin. According to the summons and complaint, in June 2013, the Hudson property suffered "[a] wind loss." St. Croix filed a Proof of Loss with its insurer, Regent. St. Croix estimated the property damage to be valued at $104,533. Regent's estimate was dramatically different, assessing the loss at $3224. Regent subsequently denied St. Croix's Proof of Loss. Because the parties disputed the value of the loss, Regent invoked the "Appraisal" clause of its insurance policy. The clause stated:

**2.** Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire .... The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision by any two will be binding. Each party will:

**a.** Pay its chosen umpire; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

¶ 3.   Each party appointed an appraiser. St. Croix appointed Paul Norcia, a public adjuster. Regent appointed James Fox. Norcia and Fox designated Brian Wert as the umpire.

¶ 4.   Prior to conducting their respective appraisals, Fox and Norcia engaged in a long series of combative email exchanges. Fox independently obtained a copy of St. Croix's policy, prompting Norcia to inform the panel that "Since Mr. Fox has now also made the mistake of providing the policy - it should be said that we are *not* to decide coverage matters - only damages."

¶ 5.   Ultimately, the panel completed the appraisal. Fox and Wert certified the replacement cost loss of the property to be $7265, and the actual value loss to be $2800. The award document also contained an "Award Addendum," which itemized seven parts of the property the appraisers assessed. The panel awarded actual cash value awards and replacement costs to three items:   the shingle roof, the slate roof, and a fence. The remaining four items—interior water damage, a rubber roof, windows, and the lawn—were valued at zero. Underneath the itemized list, the addendum states:   "The award on the fence item is ADVISORY ONLY. Compulsory payment is not intended as this panel has not confirmed coverage on the fence."

¶ 6.   St. Croix filed a motion to vacate the appraisal award, arguing, as relevant to this appeal, that the panel exceeded its authority by "[d]eciding coverage issues" when its sole duty was to assess loss values. The circuit court granted St. Croix's motion, finding that "[f]rom the face of the award, the appraisers demonstrated a lack of understanding of the pro-

cess by exceeding the scope of their assignment and taking coverage into consideration." Regent appeals.[1]

## DISCUSSION

¶ 7. On appeal, Regent contends that the circuit court erroneously vacated the appraisal award because there is no credible evidence of bad faith, fraud, material mistake, or a failure of the panel to understand its contractually assigned task. Regent also contends that it appropriately considered the cause of the damage to the Hudson property when assessing the amount of loss. We conclude that the appraisal panel's contractually assigned task was limited to assessing the value of the damaged property and that the panel exceeded its authority by determining which losses were covered by the Regent policy.

¶ 8. "This case involves the construction of an insurance contract, which we review de novo." *The Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 30, 319 Wis. 2d 52, 768 N.W.2d 596. "A court's review of an appraisal award is . . . grounded in principles of contract interpretation." *Id.*, ¶ 42. "An appraisal process is an agreement by parties to a contract

---

[1] St. Croix's motion to vacate also argued in large part that the appraisal panel acted in bad faith and was not impartial. St. Croix urges us to consider this argument as well and cites to numerous emails from Fox to the panel, which indeed support its argument. Like the circuit court, we conclude that the appraisal panel did not understand its contractually assigned task and that this issue is dispositive of this appeal. We do not address the bad faith and impartiality issues. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

to allow third party experts to determine the value of an item. The court's role is not to determine whether the third party experts accurately valued the item . . . but whether the third party experts understood and carried out the contractually assigned task." *Id.*

■■■■

¶ 9. "Appraisals . . . are presumptively valid." *Id.*, ¶ 44. "They should not be lightly set aside, even if the court disagrees with the award." *Id.* "An appraisal may be set aside only upon the showing of fraud, bad faith, a material mistake, or a lack of understanding or completion of the contractually assigned task." *Id.* "Review of an appraisal award should usually be limited to the face of the award." *Id.*, ¶ 45. "If fraud, bad faith, material mistake, or a lack of understanding of the process are reasonably implicated, it is within a judge's discretion to allow further inquiry or discovery." *Id.*, ¶ 45.

¶ 10. Here, Regent contends that the appraisal award is valid because there is no credible evidence on the face of the award showing fraud, bad faith, a material mistake or a lack of understanding of the panel's task. Regent also argues that it appropriately considered the cause of property damage, but did not consider whether the damage was covered by the Regent policy.

¶ 11. We have found no Wisconsin case which addresses the issue before us. Accordingly, both parties direct us to other jurisdictions for guidance. Regent cites numerous cases from other jurisdictions in which courts have ruled that appraisal panels are within their rights to consider questions of *causation*. St. Croix, on the other hand, directs us to *Quade v. Secura Insurance*, 814 N.W.2d 703 (Minn. 2012), which more

appropriately addresses the issue before us—whether an appraisal panel can consider *coverage*.

¶ 12. In *Quade*, Dennis and Melinda Quade submitted a claim to Secura Insurance for storm damage to several buildings on their farm. *Id.* at 704. Secura partially denied their claim. *Id.* Instead of pursuing an appraisal in accordance with their insurance policy, the Quades filed suit against Secura, claiming "that the appraisal clause did not apply to their claim for damage to the roofs because the parties disputed whether the damage to the roofs is covered by the policy—not the cost of repairing the roofs." *Id.* at 705. The district court dismissed the Quade's suit and ordered the parties to participate in the appraisal process. *Id.* Ultimately, the case went to the Minnesota Supreme Court "on the issue of whether a party may demand appraisal when the parties fail to agree on the 'amount of loss' even if there are remaining coverage questions." *Id.*

¶ 13. The Minnesota Supreme Court upheld the district court's order for appraisal, but limited the prospective panel's considerations to questions of fact (causation), rather than questions of law (coverage):

> After reading the appraisal clause in the context of the insurance policy as a whole, we conclude that the phrase "amount of loss" is not ambiguous, because it is susceptible to only one reasonable interpretation. Specifically, in the insurance context, an appraiser's assessment of the "amount of loss" necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss . . . .
>
> We generally agree that appraisers have authority to decide the "amount of loss" but may not construe the policy or decide whether the insurer should pay . . . . An appraiser can make no legal determinations . . . .

> We believe that under the circumstances of this case a determination of the "amount of loss" under the appraisal clause necessarily includes a determination of causation. Coverage questions, such as whether damage is excluded because it was not caused by wind, are legal questions for the court.

*Id.* at 706–07 (citations, quotation marks, and parenthetical omitted; some formatting altered).

¶ 14.   With these principles in mind, we conclude that the appraisal panel in this case exceeded its authority by considering coverage. Here, the appraisal panel's authority was defined by the "Appraisal" clause of the Regent policy. By the terms of the Regent policy, the appraisal process is limited in scope. The appraisers were to "state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision by any two will be binding." Regent specifically retained its right to deny the claim, regardless of any conclusions reached by the panel, suggesting that Regent itself would determine coverage (which, we note, could result in litigation as to the meaning of the coverage provisions). The appraisal panel was thus contractually limited to the factual task of valuing: (1) the items of property and (2) the amount of the loss.

¶ 15.   The award lists seven items the appraisal panel considered. The panel determined "actual value loss" awards and "replacement value loss" awards for three items:  the shingle roof, the slate roof, and a fence. However, they cautioned that the "award on the fence is ADVISORY ONLY. Compulsory payment is not intended as this panel has not confirmed coverage on the fence." The panel marked no other item appraised as "advisory only" because the appraisers did not "confirm[] coverage." (Capitalization omitted.) It is

impossible not to conclude that the panel must have consulted the insurance contract to "confirm[] coverage" as an integral part of the panel's determination of damages for the shingle roof and the slate roof because those items are specifically contrasted with the "advisory only" appellation to the fence. (Capitalization omitted.)

¶ 16.   The four remaining items—to which the "advisory only" notation was *not* applied—were: interior water damage, a rubber roof, windows, and the lawn. (Capitalization omitted.) The appraisal panel valued all of those items at zero, both as to actual value and as to replacement value. It is impossible to determine whether the appraisal panel set the values at zero because it concluded that those items were in fact not damaged (which causes one to wonder why one item was described as "interior water damage"), or whether it concluded there was no damage covered by the insurance contract. In view of the obvious reference to being unable to confirm coverage as to one item, and the determination of "zero" damage to another item described as damage, we conclude that the appraisal panel improperly made its own determinations about the scope of coverage under the Regent policy. We agree with the circuit court—the appraisal panel's conduct tainted the entire award.

¶ 17.   We conclude that the appraisal panel's consideration of coverage was in direct contradiction of the specific language of the insurance contract. The panel's conduct ignored Regent's reservation of the right to deny coverage, regardless of the appraisal panel's award. Further, the panel's conduct infringes on the role of the courts which have the ultimate authority to interpret contracts when the parties disagree as to the meaning of a term. *See St. Paul Fire & Marine Ins. Co.*

*v. Hausman*, 231 Wis. 2d 25, 29, 604 N.W.2d 908 (Ct. App. 1999) ("The interpretation of words or clauses in an insurance policy and the determination of coverage under that policy are questions of law we review de novo."). By reserving the right to deny coverage, Regent recognized the lack of expertise of appraisers to provide binding legal conclusions about a contract term's meaning.

¶ 18.   Although there is no decision directly on point in Wisconsin, our decision here comports with a long line of other jurisdictions that have also restricted an appraisal panel's authority to consider coverage. *See, e.g., Jefferson Ins. Co. of New York v. Superior Court of Alameda Cty.*, 475 P.2d 880, 883 (Cal. 1970) (interpreting "actual cash value or the amount of loss" to mean that appraisers could determine amount of damage relating to items submitted for their consideration, but not decide questions of coverage or policy interpretation); *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 903 (Tex. App. 2006) (stating that "if the parties agree there is coverage but disagree on the extent of the damage, the dispute concerns the 'amount of loss' and that issue is determined in accordance with the appraisal clause"); *Kendall Lakes Townhomes Developers, Inc. v. Agric ultural Excess & Surplus Lines Ins. Co.*, 916 So.2d 12, 16 (Fla. App. 2005) (permitting "appraisal panel to decide causation issues when causation is not a coverage question, but rather an amount-of-loss question"); *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 150 (Tenn. App. 2001) (interpreting "amount of loss" language to authorize appraiser only to value property loss and not to resolve insurer's liability under policy); *Kawa v. Nationwide Mut. Fire Ins. Co.*, 174 Misc.2d 407, 408, slip op. (N.Y. 1997) ("appraisal clause only applies to a case

with a disagreement 'as to the amount of loss or damage[,]' and not where the insurer denies liability") (citation and one set of quotation marks omitted).

¶ 19.  For the foregoing reasons, we affirm the circuit court and remand for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed.