DANIEL KELLY, J. (concurring).
¶33 Distinguishing between cases is about more than interferometry; we don't simply overlay the specifics of one case on another and pronounce them distinguished if they imprecisely map each other. As law school professors are wont to say, all cases are distinguishable, if for no other reason than that they involve different parties. A meaningful distinction, on the other hand, is one in which a logical hitch prevents the lessons of a prior case from applying to the one at bar. Comparing this case to Kett v. Community Credit Plan, Inc. [1] reveals no *410 such hitch. So we should be governed by Kett, or we should overrule it to the extent it is inconsistent with our conclusion. Either of those options is better than the one we chose, which was to say that our holding and Kett can co-exist without creating cognitive dissonance. They cannot. Because I believe Kett wrongly decided the application of Wis. Stat. § 427.104, I join all of the court's opinion except the part addressing that case.
¶34 The question both here and in Kett is whether a creditor trying to collect a debt arising from a consumer credit transaction engaged in collection practices prohibited by Wis. Stat. § 427.104. In Kett, the debtor claimed the creditor (Community Credit) filed its claim in a venue other *178 than one authorized by Wis. Stat. § 421.401(1). So, it said, Community Credit "[e]ngage[d] in ... conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer...." in violation of § 427.104(1)(h). 228 Wis. 2d 1, 24, 596 N.W.2d 786 (1999) (quoting § 427.104(1)(h) ) (internal marks omitted). It also said Community Credit "[c]laim[ed], or attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right does not exist." Id. (quoting § 427.104(1)(j) ) (internal marks omitted). The court of appeals, we noted, "concluded that Community Credit had a duty to know that Milwaukee County was not the proper venue and that Community Credit's filing of a replevin action in Milwaukee County was an attempt to enforce a right it had reason to know did not exist." Id. at 25, 596 N.W.2d 786. We then said that "Community Credit has set forth no reason that persuades this court that the court of appeals erred in concluding that Community Credit engaged in prohibited debt collection practices as a matter of law *411 by attempting to enforce a right it had reason to know did not exist." Id. at 26, 596 N.W.2d 786. Consequently, we held that Community Credit had violated §§ 427.104(1)(h) and (j), thereby entitling Kett to damages under § 427.105. So Kett's lesson is that a procedural mistake-filing in the wrong venue[2] -means the creditor had no right that it could enforce against the debtor. That is to say, the right would have existed if the creditor had filed in the correct venue, but filing in the wrong venue eliminated the right.
¶35 Here, as in Kett, the error giving rise to Mr. Kirsch's claim was procedural. Specifically, he claimed Security Finance filed its collection action without first giving him written notice of his right to cure the default, as required by Wis. Stat. § 425.104(1). Our statutes provide that, if the creditor doesn't give that notice, it may not file the collection action: "A merchant may not ... commence any action ... unless the merchant believes the customer to be in default ( s. 425.103 ), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104...." Wis. Stat. § 425.105(1) As in Kett, Mr. Kirsch claims this failure meant Security Finance lacked a right capable of being enforced by the complaint. Therefore, he argued, it must necessarily follow that Security Finance "[c]laim[ed], or attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right does not exist" in violation of § 427.104(1)(j). We disagreed with Mr. Kirsch, and rightly so, because "[t]he word 'right' refers to the rights ... contained in the loan agreement. It appears undisputed that Security sought to enforce the loan agreement, a 'right,' to *412 enforce the unpaid loan obligation after default." Majority op., ¶15. Consequently, Security Finance undoubtedly had a "right" within the meaning of § 427.104(1)(j) when it filed its complaint, even though the filing was premature.
¶36 So here is the problem. We held in this case that the "right" identified in Wis. Stat. § 427.104(1)(j) is a contract right, and it doesn't go away just because the creditor fails to follow the proper procedure in bringing its enforcement action. Majority op., ¶¶2, 31 ("[A] creditor's failure to provide such notice does not constitute a sufficient basis for relief under ch. 427."). But in Kett we said otherwise. We said that Community Credit's failure to file its action in the correct venue meant it was *179 trying to enforce a right it did not have. That can only be true if: (1) the "right" to which § 427.104(1)(j) refers is the right to file the suit, not a contract right; or (2) a procedural error can extinguish a contract right. The first possibility conflicts with our holding today because we explicitly said that the statutory term "right" refers to a contract right. The second possibility also conflicts with our holding because we said that Security Finance's procedural error did not extinguish its contract right. So § 427.104(1)(j) either penalizes a procedurally flawed complaint ( Kett ), or it doesn't ( Security Finance ). Both propositions cannot be true simultaneously.
¶37 But the court tries. In an attempt to distinguish the two cases, it says "[a] claim of improper venue is not the same as a claim that a creditor failed to provide a notice of default and right to cure." Majority op., ¶28. Yes, that is true-proper venue is not the same thing as proper notice. The former governs where the suit may be filed. The latter governs whether it may be filed at all. But nothing in the *413 opinion explains why Wis. Stat. § 427.104(1)(j) applies to one of the procedural errors but not the other. And if this is a matter of comparative gradation, I should think that filing a premature complaint is a significantly more egregious error than filing a timely complaint in the wrong county.
¶38 The court also believes it can distinguish Kett on the ground that Community Credit used the judgments obtained in the wrong venue to repossess collateral that had secured the loans. It says "[t]he debtors' claims in Kett in large part centered around the creditor's 'nonjudicial enforcement' of the debts, as described in Wis. Stat. § 425.206." Majority op., ¶29. True enough-that's where the debtors focused. But the court focused on the improper venue chosen by the creditor. We said the court of appeals reached the correct conclusion in deciding that "Community Credit had a duty to know that Milwaukee County was not the proper venue and that Community Credit's filing of a replevin action in Milwaukee County was an attempt to enforce a right it had reason to know did not exist." Kett, 228 Wis. 2d at 25, 596 N.W.2d 786. The debtors may have been interested in the collateral, but we were interested in the venue.[3] This is not a basis for distinguishing the cases.
¶39 I think the court's opinion today correctly analyzes the relationship between procedural errors and Wis. Stat. § 427.104(1)(j). But I don't think that *414 reasoning can co-exist with Kett. So I would overrule Kett to the extent it holds that a creditor who files an enforcement action in the wrong venue violates § 427.104(1)(j). I join all other aspects of the court's opinion.
¶40 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

For purposes of our review, we accept the allegations of Kirsch's counterclaims as true. See Hausman v. St. Croix Care Center, 214 Wis. 2d 655, ¶10, 571 N.W.2d 393 (1997). Security Finance appears to argue in its brief that if any mistake was made with the notice of right to cure, that it was de minimis. Nevertheless, in response to Kirsch's counterclaims, Security Finance voluntarily dismissed its complaint.

See Mary Spector, Debts, Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts, 6 Va. L. & Bus. Rev. 257, 271-72 (2011) ("While the rules vary by state, and even within states, one thing is clear: the rate of default judgments in consumer debt collection cases is reported to have reached 95% and may be double the default judgment rate in debt cases generally.").

As amicus Legal Aid Society of Milwaukee details, even a dismissed lawsuit can have decidedly negative consequences for a consumer. The record of a dismissed suit is still publicly available on CCAP, "an internet accessible case management system provided by Wisconsin Circuit Court Access program." See State v. Wayerski, 2019 WI 11, ¶20 n.10, 385 Wis. 2d 344, 922 N.W.2d 468. Such information is available to potential employers, landlords, and the public at large.