Karen R. BAMMERT, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Don's Super Valu, Inc., Defendants-Respondents.

Court of Appeals

*No. 99–1271. Submitted on briefs November 24, 1999.—Decided December 21, 1999.*

## 2000 WI App 28

(Also reported in 606 N.W.2d 620.)

†Petition to review denied.

365

367

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-respondent, Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice*, assistant attorney general.

On behalf of the defendant-respondent, Don's Super Valu, Inc., the cause was submitted on the brief of *Phillip M. Steans, S.C.* of Menomonie.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Karen Bammert, a former employee of Don's Super Valu, appeals from an order affirming the Labor and Industry Review Commission's decision to dismiss Bammert's complaint for failure to state a claim under the Wisconsin Fair

Employment Act, §§ 111.31–111.395, STATS. Bammert argues that although the circuit court properly afforded "due weight" deference to LIRC's interpretation of the Act, it nevertheless erred by affirming LIRC's dismissal of Bammert's claim. Specifically, Bammert contends that the Act's prohibition against marital status discrimination, consistent with Wisconsin precedent and public policy, must necessarily encompass discrimination based on spousal identity. Because we conclude that LIRC reasonably interpreted the WFEA "to protect the status of being married in general rather than the status of being married to a particular person," we affirm the order.

## BACKGROUND

¶ 2. It is undisputed that Bammert was terminated from her employment with Super Valu in August 1997. Bammert subsequently filed a complaint with the Equal Rights Division, claiming that Super Valu had discriminated against her on the basis of her marital status, contrary to the WFEA, §§ 111.31–111.395, STATS. Specifically, Bammert claimed she had been terminated because her husband, a police sergeant, had participated in the arrest of her employer's wife.[1]

---

[1] Bammert, claiming marital status as the basis for her complaint to the Equal Rights Division, alleged the following:

I was terminated and retaliated against. On 6/7/97 my [employer's] wife was arrested for operating while intoxicated. My spouse is in law enforcement, he was not the arresting officer but he was the sergeant who had to go to the scene and administer the portable breathalyzer. After this incident the family was very cool to me. The [wife's] name was in the local paper the week of 7/20/97. Her grandson, also employed there, was badmouthing my spouse to co-workers. On 8/07/97 my spouse approached the grandson while off duty about this. This did not affect my job performance nor was I involved in it. On 8/28/97 I was terminated, with no reason given to

369

¶ 3. In October, an equal rights officer dismissed Bammert's complaint, stating that "[t]he prohibition against discrimination because of marital status does not extend to the particular identity, personal characteristics or actions of one's spouse." On appeal to the Equal Rights Division, the administrative law judge affirmed the preliminary determination dismissing Bammert's complaint. The ALJ, concluding that Bammert's complaint constituted a marital status claim based on spousal identity, noted that under the WFEA, "marital status discrimination does not include an employer's actions that are based on the identity or particular characteristics of an employee's spouse." LIRC affirmed the ALJ's decision, reiterating that Bammert's complaint had failed to allege marital status discrimination within the meaning of the WFEA. Bammert thereafter filed a petition in circuit court for review of LIRC's decision. The circuit court, affirming LIRC's decision, determined that LIRC had acted within its power and that its decision was reasonable within the clear meaning of the statute. This appeal followed.

## ANALYSIS

¶ 4. On appeal, we review LIRC's decision, and not that of the circuit court. *See Knight v. LIRC*, 220 Wis. 2d 137, 147, 582 N.W.2d 448, 453 (Ct. App. 1998). "Our standard of review for agency decisions depends

---

me. The reason given to the unemployment department was a personality conflict between Don, my employer, Brad, his son-in-law who is the general manager, and myself (Karen). Also stated was a problem between my spouse and the grandson. The reason given to my fellow managers was a problem between my spouse, the grandson and the [employer's] wife.

upon whether the issues presented are questions of law or questions of fact." *Id.* In the instant case, we are presented with the application of a statute, the WFEA, to a set of undisputed facts, which involves a question of law. We therefore apply one of three levels of deference to the agency's conclusion: "great weight," "due weight" or "de novo." *Id.* (quoting *Sauk County v. WERC*, 165 Wis. 2d 406, 413–14, 477 N.W.2d 267, 270–71 (1991)). Thus, the initial question we must answer is which level of deference applies to LIRC's statutory interpretation.

¶ 5. The "great weight" standard, which provides the highest level of deference, is accorded to an agency's conclusion of law or statutory interpretation when the following four elements are met: "(1) the agency is responsible for administering the statute, (2) the agency['s] conclusion or interpretation is long standing, (3) the agency employed its specialized knowledge or expertise in forming the conclusion or interpretation, and (4) the agency['s] interpretation provides consistency and uniformity in the application of the statute." *Knight*, 220 Wis. 2d at 148, 582 N.W.2d at 453. Under the "great weight" standard, we "must uphold the agency['s] interpretation if it is reasonable and if it is not contrary to the clear meaning of the statute." *Id.* Further, we will sustain an agency's reasonable interpretation even if there is a more reasonable interpretation available. *See Margoles v. LIRC*, 221 Wis. 2d 260, 265, 585 N.W.2d 596, 598 (Ct. App. 1998).

¶ 6. The "due weight" standard applies "if the agency['s] interpretation is 'very nearly' one of first impression." *Knight*, 220 Wis. 2d at 148, 582 N.W.2d at

453. In other words, this standard will be applied where an agency has some experience making the statutory interpretations being challenged, but has not developed the expertise needed to place it in a better position than this court to interpret the statute. *See Margoles,* 221 Wis. 2d at 265, 585 N.W.2d at 598–99. Under the "due weight" standard, a reasonable agency decision will not be overturned if it furthers the purpose of the statute, "unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency." *Knight,* 220 Wis. 2d at 148, 582 N.W.2d at 453 (quoting *Currie v. DILHR,* 210 Wis. 2d 380, 388, 565 N.W.2d 253, 257 (Ct. App. 1997)).

¶ 7. Finally, the "de novo" standard is used where the agency's conclusion of law or interpretation is one of first impression or the agency's position on the issue has been contradictory. *See Zignego Co. v. DOR,* 211 Wis. 2d 819, 824, 565 N.W.2d 590, 592 (Ct. App. 1997). Where this standard applies, we will afford no weight to the agency's conclusion of law or interpretation. *See Knight,* 220 Wis. 2d at 148–49, 582 N.W.2d at 453.

¶ 8. Bammert urges this court to apply due weight deference to LIRC's interpretation of marital status discrimination under the WFEA. She argues that LIRC cannot satisfy the criteria necessary for this court to afford great weight to its statutory interpretation.

¶ 9. Although Bammert does not dispute that LIRC was charged by the legislature with the duty of administering the WFEA, *see* §§ 103.04(1) and 111.39(5), STATS.; *Currie,* 210 Wis. 2d at 389, 565 N.W.2d at 257, she points out that LIRC has addressed

this specific issue in only three prior cases, none of which was prior to 1985.[2] Thus, Bammert challenges whether LIRC's interpretation is one of "long-standing," whether it employed any specialized knowledge or expertise in forming its interpretation and finally, whether its interpretation provides consistency and uniformity in the application of the statute. In *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764, 569 N.W.2d 726, 732 (Ct. App. 1997), this court, in determining whether an agency's interpretation was one of long-standing, recognized that "the key in determining what, if any, deference courts are to pay to an administrative agency's interpretation of a statute is the agency's experience in administering the particular statutory scheme—and that experience must necessarily derive from consideration of a variety of factual situations and circumstances."

¶ 10. It is undisputed that LIRC has experience administering the particular statutory scheme at issue here, namely the WFEA. This court has recognized that "LIRC has experience in interpreting what acts constitute marital status discrimination." *Braatz v.*

[2] Although Bammert intimates that the earliest LIRC case on this issue was in 1985, she is, in fact, referencing a Milwaukee County Circuit Court case that interpreted marital status discrimination to encompass discrimination "based on the identity, occupation, employment situation or other attributes of a person's spouse." *See Arrowood v. HGCC of Wisconsin, Inc.*, No. 641–354 (Milwaukee Cty. Cir. Ct., Jan. 29, 1985). Although *Arrowood* conflicts with LIRC's later interpretation of marital status discrimination, the *Arrowood* court recognized that, "[n]o marital status cases have yet been decided in reported cases concerning the identity of one's spouse, *nor has [LIRC] interpreted the definition.*" *Id.* at 12 (emphasis added).

373

*LIRC*, 168 Wis. 2d 124, 130, 483 N.W.2d 246, 248 (Ct. App. 1992). In fact, LIRC's administration of marital status as a basis for discrimination under the WFEA began in 1981, when marital status was included as a basis for discrimination under the Act. *See Motola v. LIRC*, 219 Wis. 2d 588, 602–03, 580 N.W.2d 297, 302 (1998); *see also* § 111.321, STATS., (created by Laws of 1981, ch. 334, § 10).

¶ 11. LIRC has addressed the specific issue presented here in three prior cases, the first in 1990. *See Birk v. Georgia-Pacific Corp.* (LIRC ERD No. 8720447, Aug. 3, 1990). In *Birk*, LIRC concluded that the "WFEA does not prohibit a condition of employment simply because it involves or affects the employe's spouse, or requires a certain act of an employe's spouse." *Id.* at 5. Two subsequent cases on this issue, consistent with *Birk*, held that the WFEA's proscription of marital status discrimination does not encompass discrimination based on spousal identity. *See Miner v. Blunt, Ellis & Loewi*, (LIRC ERD No. 8701977, May 29, 1991), *aff'd sub nom., Miner v. LIRC*, No. 91-CV–452 (Rock Cty. Cir. Ct., Apr. 7, 1992); *Andree v. CT&I Corp.*, (LIRC ERD No. 8921034, Aug. 29, 1991).

¶ 12. LIRC has utilized its general expertise in administering and interpreting the WFEA, and specifically, in interpreting what constitutes marital status discrimination. *See Braatz*, 168 Wis. 2d at 130, 483 N.W.2d at 248. Since its 1990 determination that marital status discrimination under the WFEA does not encompass discrimination based on spousal identity, LIRC has remained consistent on this issue. Accordingly, we conclude that LIRC's interpretation is one of long-standing, and that it has employed its expertise in

forming its interpretation. Additionally, giving effect to the agency's interpretation provides a consistent and uniform construction of what constitutes marital status discrimination under the WFEA. We are therefore satisfied that LIRC's decision in this case is entitled to great weight deference and must be affirmed if reasonable. *See Knight*, 220 Wis. 2d at 148, 582 N.W.2d at 453.

¶ 13. Our supreme court has framed the test for reasonableness of an agency's statutory interpretation in the negative: "An interpretation is unreasonable if it directly contravenes the words of the statute, it is clearly contrary to legislative intent or it is without rational basis." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98, 103 (1995). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *See State v. Kirch*, 222 Wis. 2d 598, 602, 587 N.W.2d 919, 920–21 (Ct. App. 1998). We must first look to the statute's plain language and if it is unambiguous, "we are prohibited from looking beyond the unambiguous language used by the legislature." *Id.* at 602, 587 N.W.2d at 921. However, if the statute is ambiguous, "we may look to the history, scope, context, subject matter, and object of the statute to discern legislative intent." *Id.* "Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning." *Id.* at 602–03, 587 N.W.2d at 921. Accordingly, we turn to the language of the WFEA.

¶ 14. Section 111.321, STATS., provides in pertinent part that "no employer . . . may engage in any act of employment discrimination as specified in s. 111.322 against any individual on the basis of . . . marital status . . . ." Further, "marital status" is defined as "the status

of being married, single, divorced, separated or widowed." Section 111.32(12), STATS. Additionally, according to § 111.31(2), STATS., "[i]t is the intent of the legislature in promulgating this subchapter to encourage employers to evaluate an employe . . . based upon the employe's . . . individual qualifications *rather than upon a particular class* to which the individual may belong." In essence, the emphasis of the WFEA is to prevent discrimination against classes of people, whether by age, race, creed, color, disability, marital status or any of the other classes protected by the statute. Given the language of the statute and the policy behind its prohibitions, we conclude that LIRC reasonably interpreted the WFEA "to protect the status of being married in general rather than the status of being married to a particular person." *Bammert v. Don's Super Valu,* (LIRC ERC No. 199703978, March 6, 1998).[3]

---

[3] Bammert argues for a broader interpretation of marital status discrimination under the WFEA. In an attempt to support her position, Bammert urges this court to apply the holding of *Abbyland Processing v. LIRC,* 206 Wis. 2d 309, 557 N.W.2d 419 (Ct. App. 1996), to the facts of this case. In *Abbyland,* this court concluded that an employer had discriminated against its employee based upon her gender and marital status in setting her salary level. Discrimination was found, in part, based on comments that the employee's husband was "earning enough." *Id.* at 319, 557 N.W.2d at 423. Bammert, therefore, argues that it was a characteristic of the employee's spouse, and not the status of being married that resulted in a finding of marital status discrimination. The question of whether marital status discrimination encompassed discrimination based on spousal identity was not, however, at issue before the *Abbyland* court and is therefore inapplicable here.

Bammert additionally relies on our supreme court's discussion in *Federated Rural Elec. Ins. Co. v. Kessler,* 131 Wis. 2d

¶ 15. Bammert nevertheless contends that LIRC's interpretation of marital status discrimination

189, 388 N.W.2d 553 (1986), to support her interpretation of marital status discrimination under the WFEA. In *Federated*, the issue was whether an employer rule prohibiting the romantic association of any employee of one sex with a married employee of the opposite sex impermissibly discriminated on the basis of marital status in violation of the City of Madison's equal opportunities ordinance. The *Federated* court, concluding that the employer's rule prohibited a course of conduct rather than a status, determined that the rule did not violate the ordinance. Although Bammert concedes that the court's actual holding has no applicability here, she nevertheless argues that the court's understanding of marital status discrimination is relevant to the instant case. The *Federated* court stated:

> We construe the protection against marital status discrimination to fully encompass the very personal decision of an employee to marry, to remain single, or to divorce. An employer's rule which pressures a person *to make a particular choice about marriage* intrudes into an area where the Madison ordinance prohibits employer interference.
>
> A person who has voluntarily made a decision to become married, however, can be compelled to honor the commitment of that decision while he remains married. Under such an employment rule, the employee constantly controls his options regarding marriage or divorce. The employee can make whatever choices regarding his marital status that he wishes without compulsion from the employer. He can marry. He can remain single. He can divorce.

*Id.* at 212–13, 388 N.W.2d at 562 (emphasis added).

This court, however, does not interpret *Federated* as support for Bammert's interpretation of the Act. Bammert focuses on the language regarding "a particular choice about marriage," to support her contention that our supreme court views the ban on marital status discrimination as encompassing more than prejudice against married people as a class. However, the court's language, in context of its entire discussion, does not refer to an employee's choice of whom to marry or divorce, but

under the WFEA makes the language of § 111.345, STATS., superfluous. Section 111.345 provides: "Notwithstanding s. 111.322, it is not employment discrimination because of marital status to prohibit an individual from directly supervising or being directly supervised by his or her spouse."

¶ 16. Bammert contends that if the WFEA did not bar discrimination based on spousal identity, there would be no need for the legislature to have included a provision specifically allowing discrimination based on spousal identity in one limited instance, specifically where anti-nepotism policies are involved. *See* § 111.345, STATS.She therefore argues that LIRC's interpretation of marital status discrimination makes the language of § 111.345 superfluous. *See WEPC v. PSC*, 110 Wis. 2d 530, 534, 329 N.W.2d 178, 181 (1983) (a statute should be interpreted so as to not make the language of the statute superfluous). In *Miner v. Blunt, Ellis & Loewi,* (LIRC ERC No. 8701977, May 29, 1991), LIRC recognized, however, that anti-nepotism policies may have a disparate impact on the employment opportunities of married people as a class. Thus, § 111.345 creates an exception to marital status discrimination by allowing anti-nepotism policies, despite

rather refers to a person's choice to marry, remain single or divorce. Again, the emphasis is on "marital status" as a class of individuals.

In any event, because LIRC's decision in this case is entitled to great weight deference, we will sustain the agency's reasonable interpretation even if there is a more reasonable interpretation available. *See Margoles v. LIRC*, 221 Wis. 2d 260, 265, 585 N.W.2d 596, 598 (Ct. App. 1998). We note, however, that even were we to apply due weight deference to the agency's interpretation, the result would be the same as we do not determine there to be a more reasonable interpretation than LIRC's.

their disparate impact on married people as a class. We therefore conclude that LIRC's interpretation of marital status discrimination does not make § 111.345 superfluous.

¶ 17. Bammert additionally argues that LIRC's interpretation is contrary to public policy because it allows employers to force their employees to choose between their marriages and their jobs. Although Bammert's arguments for the inclusion of spousal identity as a basis for marital status discrimination are persuasive, any changes to the present interpretation and application of the statute must come from the legislature, not from this court. *See Braatz*, 168 Wis. 2d at 134, 483 N.W.2d at 250. Accordingly, because LIRC's interpretation of the WFEA is entitled to great weight deference and its interpretation is reasonable, we affirm.

*By the Court.*—Order affirmed.