Karen R. BAMMERT, Plaintiff-Appellant-Petitioner,

v.

DON'S SUPERVALU, INC., Defendant-Respondent.

Supreme Court

*No. 00–2473. Oral argument March 5, 2002.—Decided July 3, 2002.*

2002 WI 85

(Also reported in 646 N.W.2d 365.)

347

For the plaintiff-appellant-petitioner there were briefs by *Matthew A. Biegert* and *Doar, Drill & Skow, S.C.*, New Richmond, and oral argument by *Brian H. Sande.*

For the defendant-respondent there was a brief by *Phillip M. Steans* and *Phillip M. Steans, S.C.*, Menomonie, and oral argument by *Phillip M. Steans.*

¶ 1. DIANE S. SYKES, J. This is an action for wrongful discharge, and it presents a single question of first-impression: can the public policy exception to the employment-at-will doctrine be invoked when an at-will employee is fired in retaliation for the actions of his or her non-employee spouse? We answer this question no.

¶ 2. Karen Bammert worked at Don's Super Valu, Inc. in Menomonie. Her husband is a Menomonie police officer. Don's is owned by Don Williams, whose wife, Nona, was arrested for drunk driving. Bammert's husband assisted in the arrest by administering a breathalyzer test. Shortly thereafter, Bammert was fired, allegedly in retaliation for her husband's participation in the arrest of her boss's wife. She sued for wrongful discharge, invoking the public policy exception to the employment-at-will doctrine. The circuit court dismissed for failure to state a claim, and the court of appeals affirmed. We accepted review.

¶ 3. The public policy exception to the employment-at-will doctrine is a narrow exception that allows at-will employees to sue for wrongful discharge if

350

they are fired for fulfilling, or refusing to violate, a fundamental, well-defined public policy or an affirmative legal obligation established by existing law. It has never been extended to terminations in retaliation for conduct outside the employment relationship; neither has it been applied to terminations in retaliation for the conduct of someone other than the terminated employee. To allow it here would therefore expand the exception beyond its present boundaries in two significant and unprecedented ways, with no logical limiting principles.

¶ 4. Accordingly, we decline to recognize a cause of action for wrongful discharge under the public policy exception to the employment-at-will doctrine for terminations in retaliation for the conduct of a non-employee spouse. The allegations in this case, if true, make Karen Bammert's termination reprehensible, but not actionable.

I

¶ 5. The case is before us on the circuit court's order dismissing the complaint for failure to state a claim pursuant to Wis. Stat. § 802.06(2) (1999–2000)[1], and so we accept the facts alleged as true for purposes of our review. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 7, 237 Wis. 2d 19, 28, 614 N.W.2d 443. Karen Bammert was employed at Don's Super Valu, Inc. in Menomonie for approximately 26 years. Her husband is a Menomonie police sergeant. Don's is owned by Don Williams, whose wife, Nona, was arrested for drunk driving on June 7, 1997. Bammert's husband partici-

---

[1] All other statutory references are to the 1997–1998 version of the Wisconsin Statutes.

351

pated in the drunk driving field investigation by administering a portable breathalyzer test to Nona Williams, which she failed.

¶ 6. On August 28, 1997, Bammert was fired by Don's in retaliation for her husband's participation in Nona Williams' drunk driving arrest. At the time of her termination, she was an assistant manager at the supermarket.

¶ 7. Bammert sued for wrongful discharge.[2] Don's moved to dismiss, and the Dunn County Circuit Court, the Honorable Eric J. Wahl, dismissed the complaint for failure to state a claim, concluding that the employment-at-will doctrine's public policy exception, announced by this court in *Brockmeyer v. Dun &*

---

[2] Bammert had initially filed a claim with the Wisconsin Equal Rights Division of the Department of Workforce Development claiming that she had suffered employment discrimination as a result of her marital status, prohibited under Wis. Stat. §§ 111.31–111.395. Her claim was dismissed, the dismissal was affirmed by the Labor and Industry Review Commission (LIRC), and ultimately sustained on judicial review in the circuit court and the court of appeals. *Bammert v. LIRC,* 2000 WI App 28, 232 Wis. 2d 365, 369, 606 N.W.2d 620 (Ct. App. 1999) ("*Bammert I*"), *rev. denied,* 2000 WI 21, 233 Wis. 2d 86, 609 N.W.2d 475. The court of appeals in *Bammert I* agreed with LIRC's conclusion that the statute protected against discrimination on the basis of marital status in general, not the status of being married to a particular person. *Bammert I,* 2000 WI App 28, ¶ 14. Some of the record items from the administrative and judicial proceedings in *Bammert I* were put into the record on the motion to dismiss in this case, by way of an affidavit from Don's counsel. Accordingly, the motion to dismiss should have been treated as a motion for summary judgment pursuant to Wis. Stat. §§ 802.06(2)(b) and 806.08. This procedural irregularity does not affect our review of the legal issue presented.

*Bradstreet,* 113 Wis. 2d 561, 335 N.W.2d 834 (1983), did not apply. The court of appeals affirmed. We accepted review and now affirm.

II

¶ 8. The question of whether the circuit court properly dismissed the complaint for failure to state a claim is a question of law that we review de novo. *Hausman v. St. Croix Care Ctr.,* 214 Wis. 2d 655, 662, 571 N.W.2d 393 (1997). Bammert was an at-will employee. In general, at-will employees are terminable at will, for any reason, without cause and with no judicial remedy. Whether Bammert has an actionable claim for wrongful discharge turns on the question of whether the public policy exception to the employment-at-will doctrine can be extended to a retaliatory discharge based upon the conduct of a non-employee spouse.

¶ 9. The starting point for any wrongful discharge case is *Brockmeyer.* There, we adopted a public policy exception to the long-standing employment-at-will doctrine which allows an at-will employee to sue for wrongful discharge "when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law." *Brockmeyer,* 113 Wis. 2d at 573. *Brockmeyer* noted that ordinarily, an employer may discharge an at-will employee " 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.' "[3] *Id.* at 567 (footnote omitted).

---

[3] There are various statutory exceptions to the employment-at-will doctrine. *See Strozinsky v. School Dist. of Brown Deer,* 2000 WI 97, ¶ 35, 237 Wis. 2d 19, 39, 614 N.W.2d 443. For instance, Title VII of the Civil Rights Act of 1964 and the Wisconsin Fair Employment Act each prohibit employers from discharging an employee on the basis of race, color,

¶ 10. The court in *Brockmeyer* specifically declined to engraft a broad implied duty of good faith onto the at-will employment relationship. *Id.* at 569. "Imposing a good faith duty to terminate would unduly restrict an employer's discretion in managing the work force" and " 'subject each discharge to judicial incursions into the amorphous concept of bad faith.' " *Id.* (quoting *Parnar v. Americana Hotels, Inc.*, 652 P.2d 625, 629 (Haw. 1982)). Instead, the court concluded that "in the interests of employees, employers and the public, a narrow public policy exception" was justified, applicable only where the discharge "clearly contravenes the public welfare and gravely violates paramount requirements of public interest."[4] *Id.* at 572–73.

¶ 11. In adopting the exception, the court recognized that "public policy" is too broad a concept to be sufficient as a legal standard for evaluating discharge claims, and therefore articulated several guidelines:

> The public policy must be evidenced by a constitutional or statutory provision. An employee cannot be fired for refusing to violate the constitution or a statute. Employers will be held liable for those terminations that effectuate an unlawful end.
>
> We intend to recognize an existing limited public policy exception. An employer may not require an

religion, sex, or national origin. Other statutes make it unlawful for employers to terminate workers because of participation in union activities, jury service, military service, or testifying at an occupational, safety, and health proceeding. *Id.* at ¶ 34.

[4] *Brockmeyer* also held that the cause of action for wrongful discharge pursuant to the public policy exception sounds in contract, not tort: "The contract action is essentially predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 575–76, 335 N.W.2d 834 (1983).

employee to violate a constitutional or statutory provision with impunity. If an employee refuses to act in an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior. To say that the employer could be prosecuted for criminal involvement as a result of the activities would be little solace for the discharged employee.

Courts should proceed cautiously when making public policy determinations. No employer should be subject to suit merely because a discharged employee's conduct was praiseworthy or because the public may have derived some benefit from it.

*Id.* at 573–74.

¶ 12. Accordingly, to state a claim for wrongful discharge under *Brockmeyer*, a plaintiff must identify a constitutional, statutory, or administrative provision that clearly articulates a fundamental and well-defined public policy. *Strozinsky*, 2000 WI 97, ¶ 39; *see also Winkelman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 23–24, 483 N.W.2d 211 (1992) (extending public policy exception to public policies found in administrative rules). Not every statutory, constitutional, or administrative provision invariably sets forth a clear public policy mandate. *Kempfer v. Automated Finishing, Inc.*, 211 Wis. 2d 100, 112, 564 N.W.2d 692 (1997). The determination of whether a public policy is sufficiently fundamental and well-defined is made by reference to the content of the provision. *Id.* (citing *Winkelman*, 168 Wis. 2d at 24.) If a plaintiff identifies a public policy sufficient to trigger the exception, and further demonstrates that the termination violated that public policy, the burden shifts to the employer to show just cause for the termination. *Strozinsky*, 2000 WI 97, ¶ 37.

¶ 13. Our cases since *Brockmeyer* have cautioned against interpreting the public policy exception too broadly. The employment-at-will doctrine is a "stable fixture" of our common law, and has been since 1871. *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 112, 579 N.W.2d 217 (1998) (citing *Prentiss v. Ledyard*, 28 Wis. 131, 133 (1871)); *see also Strozinsky*, 2000 WI 97, ¶ 33. It is central to the free market economy and "serves the interests of employees as well as employers" by maximizing the freedom of both. *Batteries Plus, LLC v. Mohr*, 2001 WI 80, ¶¶ 13–15, 244 Wis. 2d 559, 565, 628 N.W.2d 364 (citing *Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 12, 241 Wis. 2d 700, 623 N.W.2d 739). The "antidote" to the potential for unfairness in employment-at-will "is an employment contract." *Batteries Plus*, 2001 WI 80, ¶ 15.

¶ 14. The prevailing general rule is that an at-will employee has no legal remedy for "an employer's unjustified decision to terminate the employment relationship." *Strozinsky*, 2000 WI 97, ¶ 33 (citing *Brockmeyer*, 113 Wis. 2d at 574). The employment-at-will doctrine thus inhibits judicial "second-guessing" of discharge decisions—even those that are unfair, unfortunate, or harsh. *Strozinsky*, 2000 WI 97, ¶ 33.

¶ 15. Substantive expansions of the public policy exception since *Brockmeyer* have been few and limited in nature. *See Hausman*, 214 Wis. 2d at 669 (public policy exception applies where employee is fired for fulfilling an affirmative legal or public policy duty even though there was no command from the employer to violate public policy); *Winkelman*, 168 Wis. 2d at 23–24 (public policy can be embodied in an administrative rule, even though *Brockmeyer* had referred only to the constitution and statutes); *Wandry v. Bull's Eye Credit Union*, 129 Wis. 2d 37, 46–47, 384 N.W.2d 325 (1986) (a

discharge can violate public policy if it violates the spirit, if not the letter, of a statute).

¶ 16. More often than not, the cases have emphasized the limited scope of the exception. *See, e.g., Batteries Plus,* 2001 WI 80, ¶ 33 (warning that a broad interpretation of the public policy exception would "interject government agencies and the courts into traditional employment relations in a manner inconsistent with employment-at-will"); *Strozinsky,* 2000 WI 97, ¶ 64 (suggesting that an expansion of the exception would open a "Pandora's Box for employment litigation"); *Kempfer,* 211 Wis. 2d at 113 (emphasizing that the exception is "very narrow"); *Hausman,* 214 Wis. 2d at 667–668 (declining to expand the exception to include a broad "whistle-blower" concept); *Bushko v. Miller Brewing Co.,* 134 Wis. 2d 136, 142, 396 N.W.2d 167 (1986) (stressing the importance of summary judgment as a means of screening out cases that seek to expand the exception beyond its traditionally narrow scope).

¶ 17. Bammert's claim must be evaluated against this backdrop. She has identified two public policies as being implicated here: Wis. Stat. § 346.63, which prohibits the operation of a motor vehicle while under the influence of an intoxicant; and Wis. Stat. § 765.001(2), which describes the intent of the Family Code as including the promotion of the institution of marriage, for the preservation of the family, society, the state, morality, and indeed, all civilization.

¶ 18. We would be hard-pressed to say that these are not fundamental, well-established public policies. Clearly, both statutes reflect compelling public interests—one requiring the diligent pursuit and punishment of drunk drivers and the other requiring the

357

vigorous promotion of the institution of marriage. But on the assumed facts of this case, that conclusion doesn't get us very far.

¶ 19. Bammert was not fired for *her* participation in the enforcement of the laws against drunk driving; she was fired for *her husband's* participation in the enforcement of those laws. Discharges for conduct outside of the employment relationship by someone other than the discharged employee are not actionable under present law. The public policy generally favoring the stability of marriage, while unquestionably strong, provides an insufficient basis upon which to enlarge what was meant to be, and has always been, an extremely narrow exception to employment-at-will.

¶ 20. Bammert advocates an expansion of the public policy exception far beyond that contemplated by our case law, and she cites no authority for it.[5] Up to now, where the exception has been applied, the public policy at issue has always been vindicated by the employee himself or herself, within the context of the employment relationship. *See, e.g., Strozinsky,* 2000 WI 97, ¶ 2 (payroll clerk refused to violate tax withholding regulations); *Hausman,* 214 Wis. 2d at 659–61 (nursing home employee complied with legal obligation to prevent abuse or neglect of patients by reporting it); *Kempfer,* 211 Wis. 2d at 106–07 (commercial truck driver refused to drive without a commercial driver's license); *Winkelman,* 168 Wis. 2d at 16–18 (nurse refused to work in area of hospital for which she was not qualified); *Wandry,* 129 Wis. 2d at 39–40 (credit union

---

[5] That is, Bammert cites no authority in the employment-at-will context. She does cite *NLRB v. Advertisers Mfg. Co.,* 823 F.2d 1086, 1088 (7th Cir. 1987), but that case involved an action for unfair labor practices under the National Labor Relations Act, and so its analysis is not applicable here.

clerk refused to comply with credit union demand for reimbursement of customer's bad check).

¶ 21. In contrast, Bammert's claim identifies a public policy completely unrelated to her employment, being enforced by someone else, who is employed elsewhere. That the "someone else" is her husband makes her discharge obviously retaliatory, and reminds us of the sometimes harsh reality of employment-at-will, but it does not provide acceptable grounds for expansion of the public policy exception beyond its present boundaries.

¶ 22. The public policy exception is rooted in the principle that "[a]n employer may not require *an employee* to violate a constitutional or statutory provision with impunity. If an employee refuses to act in an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior." *Brockmeyer,* 113 Wis. 2d at 573 (emphasis added).

¶ 23. In *Hausman,* the most recent case to entertain any expansion of the public policy exception, we held that "[w]here the law imposes an affirmative obligation upon an employee . . . and the employee fulfills that obligation," termination for that reason violates public policy.[6] *Hausman,* 214 Wis. 2d at 669. Thus, as it currently stands, the public policy exception

---

[6] As noted above, *Hausman* also expressly rejected an expansive "whistle-blower" exception, even though we conceded that such an exception would better protect citizens from reprisal for carrying out " 'their civil duty of reporting infractions of rules, regulations, or the law pertaining to public health, safety, and the general welfare.' " *Hausman v. St. Croix Care Ctr.,* 214 Wis. 2d 655, 666, 571 N.W.2d 393 (1997) (quoting *Palmer v. Brown,* 752 P.2d 685 (Kan. 1988)). Acknowledging

applies to discharges in retaliation for the fulfillment of "an affirmative obligation" which the law places "upon an employee." Extending it to discharges for fulfillment of an affirmative obligation which the law places on *a relative* of an employee would go too far, and have no logical stopping point.

¶ 24. Line-drawing would be required but almost impossible to do in any principled way. For now, the rule would apply to police officers' spouses fired in retaliation for the officers' conduct in the line of duty—but what about the spouses of prosecutors, or judges, or DNR investigators, or IRS agents? What about discharges in retaliation for the conduct of the employee's parents, children, or siblings? The Family Code's strong endorsement of the stability of marriage is accompanied by an equally strong endorsement of the family as a central and fundamentally important societal institution. *See* Wis. Stat. § 765.001(2). If the statute is sufficient to justify application of the public policy exception to discharges in retaliation for the conduct of non-employee spouses, it is certainly sufficient to justify extension of the exception to discharges in retaliation for the conduct of non-employee parents, children, and siblings.

¶ 25. Public policy comes in many variations, is implicated in many contexts, and is carried out by many people, both publicly and privately. Once expanded in the manner argued here, the public policy exception would no longer be subject to any discernable limiting principles. It would arguably apply to retaliatory discharges based upon the conduct of *any* non-employee relative, for the fulfillment of or refusal to violate public

---

that adoption of "such a wide-ranging" exception would advance the public interest, we declined to do so, because "[s]uch a wide extension of existing law . . . would be contradictory ·to our established precedent." *Hausman,* 214 Wis. 2d at 666.

policy in a wide variety of ways and in a manner completely unconnected to the employment relationship.

¶ 26. The public policy exception cannot be stretched that far and still be recognizable under *Brockmeyer*'s limited formulation. Accordingly, we decline to recognize a cause of action for wrongful discharge under the public policy exception to the at-will employment doctrine for terminations in retaliation for the conduct of a non-employee spouse.[7]

¶ 27. Of course, a natural sense of outrage over the facts alleged in this case brings on a desire to see the law provide a remedy, but it does not. Sergeant Bammert was doing his duty, for the benefit of the public, but *Brockmeyer* made it clear that the public policy exception does not apply where the "conduct [precipitating the discharge] was praiseworthy or because the public may have derived some benefit from it." *Brockmeyer*, 113 Wis. 2d at 573–74. To expand the public policy exception to fit this case would invite future applications to retaliatory discharges based upon the conduct of any close relative, conduct which is wholly unconnected to the employment relationship. This clearly would be inconsistent with *Brockmeyer*'s intention that the public policy exception remain narrow in scope. The case was properly dismissed for failure to state a claim, and we affirm.

---

[7] The dissent would expand the public policy exception to cover any retaliatory discharge of a police officer's spouse, citing Wis. Stat. § 946.10, the bribery statute. That statute, however, criminalizes the transfer or promise of some item of property or personal advantage as an inducement *before* the public official acts. Bammert's discharge occurred *after* Nona Williams' drunk driving arrest. She did not cite the bribery statute, which has no application here.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 28. WILLIAM A. BABLITCH, J. *(dissenting).* Karen Bammert's (Bammert) 26 years of employment at Don's Super Valu ended by her being fired. Bammert was not fired for showing up late to work or treating customers poorly. In fact, she was not fired for any job-related reason at all.

¶ 29. She was fired for her husband's actions.

¶ 30. Her husband made no mistake either. He was a police officer. He fulfilled his obligation to society by assisting in the drunk driving arrest of Nona Williams. Nona is the spouse of Bammert's employer.

¶ 31. Retaliation for Bammert's husband's actions as a police officer was the reason Bammert was fired. In my view, this is unacceptable. There is a strong public policy in vigorous enforcement of the law. Society is not served by police officers being influenced in how they do their job because of the potential consequences of a retaliatory firing. Furthermore, extending the employment at-will doctrine to protect police officers is consistent with past precedent. Unfortunately, the majority opinion does not agree. The result is that an individual will be able to influence a police officer in the form of a retaliatory firing. For these reasons, I respectfully dissent.

¶ 32. Bammert was an at-will employee of Don's Super Valu. The general rule regarding employment relationships in Wisconsin is the at-will doctrine. The doctrine generally allows an employer to "discharge an employee 'for good cause, for no cause, or even for a cause morally wrong, without being thereby guilty of legal wrong.'" *Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 567, 335 N.W.2d 834 (1983) (footnote omitted). However, Wisconsin law does allow narrow

exceptions to the at-will employment doctrine for public policy reasons. The public policy exception allows the firing of employees to recover if the firing violates a well-established and important public policy. *Id.* at 572–73. The exception that I propose is a narrow one, and certainly is a well-established, important public policy—retaliatory firing in response to a police officer's lawful actions in his or her capacity as a police officer is actionable.

¶ 33. The exception I propose is narrow in that it covers only a police officer acting lawfully in his or her capacity as an officer. This exception will not open the floodgates to litigation, as there are very few instances when a firing could fit into this exception. And when it does, it should.

¶ 34. The public policy in the case at hand is well-established and of utmost importance. Police officers have to be able to do their jobs without being influenced by the possibility of a retaliatory firing. A police officer must be able to arrest a drunk driver without his or her spouse being fired because of the arrest. Public policy dictates the vigorous enforcement of the law no matter who is on the receiving end of the enforcement. Without an exception to the at-will doctrine for retaliatory firings against police officers acting lawfully in their capacity, this public policy will be undermined.

¶ 35. Although there is little doubt that influencing, intimidating, or bribing a police officer is against public policy, *Brockmeyer* dictates that public policy must be shown by a constitutional or statutory provision. *Id.* at 573. Wisconsin Stat. § 946.10(1) (1997–98) states:

> 946.10 Bribery of public officers and employes. Whoever does either of the following is guilty of a Class D felony:

(1) Whoever, with intent to influence the conduct of any public officer or public employe in relation to any matter which by law is pending or might come before the officer or employe in the officer's or employe's capacity as such officer or employe or with intent to induce the officer or employe to do or omit to do any act in violation of the officer's or employe's lawful duty transfers or promises to the officer or employe or on the officer's or employe's behalf any property or any personal advantage which the officer or employe is not authorized to receive; . . . .

*See also State v. Rosenfeld*, 93 Wis. 2d. 325, 286 N.W.2d 596 (1980); Wis. Stat. § 946.17 (1997–98) ("Corrupt means to influence legislation; disclosure of interest.").

¶ 36. As Wis. Stat. § 946.10 (1997–98) clearly points out, as a society we do not allow a person to bribe, intimidate, or otherwise illegally influence police officers about any pending matter or any matter that "might come before the officer". In turn, there is no reason to allow an employer to bribe, intimidate or otherwise influence a police officer in this regard. There is no reason to give an' employer a get-out-of-jail free card that is not afforded to the rest of society, simply because the employer has some retaliatory influence over a police officer. There should not be one standard of the law for employers and one standard for everyone else.

¶ 37. There is no legitimate reason to protect the conduct of this employer. In a normal circumstance, this employer could not reach the person that the employer wishes to retaliate against. In this circumstance, the employee is married to one of the officers participating in the arrest, which allows the employer to therefore reach this officer. Normally, the officer would be protected from the disgruntled arrestee, but in this case, the arrestee can reach the officer. As stated

previously, we do not allow retaliation against a police officer for performing his or her duty, but in this circumstance the employer has a way around the protection of the officer. In my opinion, this loophole that allows an employer to retaliate against a police officer must be put in line with the rest of our laws, and the loophole that provides a retaliatory tool for the employer must be closed, thereby protecting police officers.

¶ 38. Furthermore, society owes its police officers a duty not to put them in the no-win position that Bammert's husband was placed in. On the one hand, he was sworn to uphold the laws of Wisconsin. On the other hand, if he keeps his oath and upholds the laws of our state, he is put in the position that the person that he assists in arresting could retaliate against him. The majority gives Bammert's husband a choice: either do your job and assist in the arrest of the drunk driver or protect your family by looking the other way. I want to eliminate this no-win situation by giving police officers the tools to do their job without the fear of retaliation. We owe such officers, like Bammert's husband, that much.

¶ 39. Moreover, the exception that I propose is consistent with past precedent. This court has recognized that compliance with an affirmative legal duty requiring action comports with a well-defined public policy, and the rationale of the public policy exception to the employment at-will doctrine. *See Hausman v. St. Croix Care Ctr.,* 214 Wis. 2d 655, 571 N.W.2d 393 (1997). In *Hausman,* we gave employees that fulfilled their legal duty protection from retaliatory firing. The idea behind the exception is simply that we want people to fulfill their legal duties. In *Hausman,* it took the form of reporting abuse in a nursing home. We do not want people to be afraid to report nursing home abuse because they are afraid to be fired; therefore, we protect

them. In the present case, we do not want a police officer to not enforce the law because the officer is afraid of a retaliatory firing. We should protect the officer, not subject him to retaliatory firing.

¶ 40. I recognize the reluctance to expand the at-will doctrine, and I too appreciate the importance of keeping with the policy of the well-defined narrow policy exception rule. We have a well-defined, extremely important policy, and we should carve out a very narrow exception that is consistent with past precedent. Therefore, I respectfully dissent.

¶ 41. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this dissent.