COURT OF APPEALS
DECISION
DATED AND FILED

October 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP725**

STATE OF WISCONSIN

Cir. Ct. No.  2018CV17

IN COURT OF APPEALS
DISTRICT III

---

VONDA JOHNSON,

   PLAINTIFF-APPELLANT,

V.

SCHOOL DISTRICT OF FLAMBEAU,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Rusk County: STEVEN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Vonda Johnson appeals an order granting a motion for summary judgment in favor of the School District of Flambeau, and dismissing

Johnson's complaint with prejudice. Johnson argues that the District's employee handbook created an express contract altering Johnson's at-will employment status, and that the District violated the contract. Johnson alternatively claims there was a triable issue on her promissory estoppel claim based on her purported reliance on language in the handbook. Johnson also contends the circuit court erred by refusing to apply the public policy exception to the at-will employment doctrine. We reject these arguments and affirm the order.

## BACKGROUND

¶2 Johnson worked for the District during the 2015-2016 and 2016-2017 school years. It is undisputed that Johnson had a written employment contract for each school year and that she was an at-will employee under those contracts. Johnson was also provided an employee handbook that expressly stated it did "not constitute a separate contract of employment" and did not contain conditions of employment. The handbook further stated: "The District reserves the right to change any or all employee standards. Employment may be terminated at any time, with or without cause, except as explicitly provided for in any other pertinent section of this Handbook or individual contract."

¶3 The 2016-2017 employee handbook included a section on "whistleblower protection" with three subsections: (A) complaint procedure; (B) purpose; and (C) anti-retaliation. The complaint procedure subsection provided:

> If any employee of the District reasonably believes that some policy, practice, or activity of the District is in violation of law, a written complaint must be filed by that employee with the District Administrator. If the complaint is about a practice or activity of the District Administrator, the complaint must be filed with the Board President.

The stated purpose of the whistleblower protection provision was to support the District's goal of legal compliance. Additionally, the anti-retaliation subsection stated, in relevant part:

> An employee is protected from retaliation only if the employee brings the alleged unlawful policy, practice, or activity to the attention of the District and provides the District with a reasonable opportunity to investigate and correct the alleged unlawful policy, practice, or activity pursuant to the District's chain of command or complaint policies. The protection described below is only available to employees who comply with this requirement. The protection against retaliation that is described below does not limit the District from taking disciplinary or other employment action, including termination, against an employee where that discipline or employment action is not based on the employee's filing of a good faith complaint under this policy. The District will not retaliate against an employee who in good faith has made a protest or raised a complaint against some policy, practice, or activity of the District, or of another individual or entity with whom the District has a business relationship, on the basis of a reasonable belief that the policy, practice, or activity is in violation of law or a clear mandate of public policy. The District will not retaliate against an employee who discloses or threatens to disclose to a supervisor or a public body any policy, practice, or activity of the District that the employee reasonably believes is in violation of law or a rule or regulation mandated pursuant to law or is in violation of a clear mandate of public policy concerning the health, safety, welfare, or protection of the environment.

¶4     During the first year of her employment, Johnson worked as a high school special education teacher, with a class of approximately eighteen to twenty students. Before the end of that year, Johnson agreed to develop and run an alternative education program for the 2016-2017 school year. At the start of the 2016-2017 school year, Johnson discovered that contrary to her expectations, the District would not be replacing her as a special education teacher. Rather, responsibility for teaching the special education students would be divided

between her and another teacher, Eileen Dean. Therefore, in addition to teaching twelve alternative education students, Johnson was responsible for teaching approximately ten special education students.

¶5 Johnson and Dean, concerned about their caseload, researched the Department of Public Instruction's (DPI) website and located a formula for calculating caseloads for special education teachers. Based on their calculations, both teachers determined they were over their recommended caseloads. It is undisputed that Johnson did not file a written complaint with the District Administrator as required in the handbook's complaint procedure. Johnson initially complained to Special Education Director Megan Dieckman in person, through phone calls, and through emails, advising Dieckman that she needed help and could not comply with all of the individual education plans (IEPs) for her special education students in addition to creating and teaching the alternative education program. During the first semester of the 2016-2017 school year, Johnson received the help of a "paraeducator" for one hour per day, which Johnson deemed insufficient to meet the requirements of the IEPs.

¶6 In October 2016, Johnson and Dean, along with Special Education Aide Shane Sanderson, met with members of the administration, including Dieckman, Principal Erica Schley, and Interim District Administrator Richard Hanson regarding the caseload concerns. Before that meeting, Johnson reviewed the anti-retaliation language of the employee handbook because she wanted to voice her concerns regarding the District's compliance with state and federal law governing special education students without fear of retaliation. At the meeting, Johnson expressed concern that she could not meet the requirements of every IEP with her current caseload. In November 2016, Sanderson was hired as a special education teacher, and several of Johnson's students were transferred to

4

Sanderson, leaving Johnson with eight of the special education students in addition to all of her alternative education students.

¶7    The District asserts that prior to the October 2016 meeting, the administrative team perceived a change in Johnson's attitude and performance from the previous school year, noting that in the 2016-2017 school year she had problems arriving at work on time and she called in sick more than usual. Dieckman asserted that in late September and October, she observed behavioral issues in Johnson's classroom, noting that Johnson utilized packets and worksheets rather than taking a "hands-on" approach with her students. Additionally, the District deemed the tone and content of Johnson's emails to Dieckman as inappropriate communication with a direct supervisor. Johnson denied that there were any problems with her performance beyond issues flowing from the excessive caseload assigned to her by the District.

¶8    It is undisputed that in December 2016, Schley presented Johnson with a Performance Improvement Plan ("PIP") that Johnson refused to sign because she did not agree that her performance needed to improve. Despite her refusal to sign the PIP, Johnson believed she was nevertheless working "under the plan." Although Johnson completed some of the tasks identified in the PIP, she did not satisfy all of its requirements.

¶9    In March 2017, Johnson was notified in writing that the School Board was considering non-renewal of her employment contract. At her request, Johnson was given a private conference with the Board, during which Johnson provided letters of recommendation, a student petition opposing her non-renewal, and a performance evaluation from the previous year. Johnson told the Board that she felt she was doing her job to the best of her ability, given her caseload of

alternative education and special education students. Johnson also expressed to the Board that she felt harassed and persecuted by school administrators "through constant emails" and "showing up" at Johnson's classroom telling her she had to sign the PIP.

¶10 On April 19, 2017, a majority of the School Board voted to approve final notice of non-renewal of Johnson's employment contract based on her refusal to acknowledge and sign the PIP, and her failure to meet the requirements of the PIP. Johnson subsequently filed the underlying suit against the District alleging breach of an employment contract, promissory estoppel, and wrongful termination under the public policy exception to the at-will employment doctrine. The circuit court granted summary judgment in favor of the District, and this appeal follows.

## DISCUSSION

¶11 This court reviews summary judgment decisions independently, applying the same standards as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). Summary judgment is granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987).

### A. Breach of Contract

¶12 It is well established in Wisconsin that employment is terminable at the will of either an employer or an employee without cause. *Wolf v. F & M Banks*, 193 Wis. 2d 439, 449, 534 N.W.2d 877 (Ct. App. 1995). Unless the parties expressly abrogate the employee's at-will status, an employee is "dischargeable at the whim of the employer, subject to the unusual public policy

6

considerations that may occasionally arise." *Id.* at 450. Such an abrogation may be evidenced by an express or implied contract. *See Ferraro v. Koelsch*, 124 Wis. 2d 154, 157-58, 368 N.W.2d 666 (1995).

¶13 Johnson contends that the District's employee handbook—specifically, the whistleblower protection provision—altered her at-will employment status and created an express employment contract. In *Ferraro*, our supreme court concluded that representations in an employee handbook may, as a matter of law, limit the power of an employer to terminate an employment relationship that would otherwise be terminable at will. *Id.* at 157. An employment manual may alter an at-will employment relationship, however, "only if the manual contains express provisions from which it reasonably could be inferred that the parties intended to bind each other to a different relationship." *Bantz v. Montgomery Estates, Inc.*, 163 Wis. 2d 973, 979, 473 N.W.2d 506 (Ct. App. 1991).

¶14 We need not determine whether the whistleblower protection provision of the employee handbook created a separate employment contract because, even if did, Johnson fails to establish that she is entitled to its protection, for two reasons. First, as noted above, the complaint procedure subsection of the handbook's whistleblower protection provision specifies that "[i]f any employee of the District reasonably believes that some policy, practice, or activity of the District is in violation of law, a written complaint must be filed by that employee with the District Administrator." It is undisputed that Johnson made no written complaint to the District Administrator. Citing the anti-retaliation subsection, Johnson suggests she was required only to bring the unlawful policy, practice, or activity "to the attention" of the District and provide the District with a reasonable opportunity to investigate and correct the alleged unlawful policy, practice, or

activity. This argument, however, ignores the whistleblower protection provision when viewed as a whole.

¶15 We construe contracts as they are written, giving the contract language its plain or ordinary meaning, consistent with what a reasonable person would understand the words to mean under the circumstances. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶¶28-29, 348 Wis. 2d 631, 833 N.W.2d 586. As relevant here, "we read a contract as a whole, to avoid the potential for ambiguity that can result if a small part of the agreement is read out of context." *Little Chute Area Sch. Dist. v. Wisconsin Educ. Ass'n Council*, 2017 WI App 11, ¶25, 373 Wis. 2d 668, 892 N.W.2d 312. Here, to be afforded the whistleblower provision's anti-retaliation protection, Johnson was required to follow the provision's complaint procedure. Her lack of a written complaint to the District Administrator fails in this regard.

¶16 Second, Johnson failed to comply with the provision's requirement that she "specify a policy, practice, or activity of the District that was in violation of law." Johnson complained of an excessive caseload, citing the DPI website's caseload formula; however, a departure from the website's caseload recommendations itself does not establish that a District policy, practice, or activity was in violation of law. To the extent Johnson argues that she was concerned her caseload would prevent her from completing IEPs or complying with their requirements under the law, her fear of a *future* violation of the law is not protected under the employee handbook's whistleblower protection provision.

¶17 Finally, even assuming Johnson could show that her expressed concern was protected under the whistleblower protection provision, the record does not provide a non-speculative basis for concluding that the non-renewal of

her contract was in retaliation for her caseload concerns or their possible impact on the District's special education program. The employee handbook's whistleblower provision specifies that the protection against retaliation does not limit the District "from taking disciplinary or other employment action, including termination, against an employee where that discipline or employment action is not based on the employee's filing of a good faith complaint under this policy."

¶18 Given the summary judgment record, there is no material question of fact that the School Board did not renew Johnson's contract because she refused to sign the PIP and otherwise failed to comply with all of its requirements. To the extent Johnson asserts that the Board was duped into approving the non-renewal by the discriminatory motives of the school administrators, Johnson made her case to the Board before it voted to terminate her employment for the upcoming year. Johnson sought help with her caseload and the District provided some assistance that Johnson viewed as insufficient. Ultimately, Johnson failed to make a prima facie case that her complaints about what she perceived as the administration's failure or refusal to provide her with more caseload assistance were entitled to protection under the employee handbook's whistleblower provision. The circuit court properly dismissed her breach of contract claim against the District.

## B. *Promissory Estoppel*

¶19 Johnson alternatively argues that the circuit court erred by dismissing her promissory estoppel claim. To prevail on her claim, Johnson must prove that: (1) the District made a promise that it reasonably should have expected to induce action or forbearance of a definite and substantial character by Johnson; (2) the promise induced such action or forbearance; and (3) injustice can

be avoided only by enforcement of the promise. *See **Mackenzie v. Miller Brewing Co.***, 2001 WI 23, ¶25, 241 Wis. 2d 700, 623 N.W.2d 739. Johnson asserts that the anti-retaliation portion of the employee handbook promised that if she complained that a District policy, practice, or activity violated the law, she would not be terminated from her position for lodging the complaint. Johnson further contends that she relied upon that promise in coming forward with her complaints, and that injustice can only be avoided by enforcement of the handbook's promise.

¶20 We again need not determine whether the employee handbook created a contract providing that Johnson's employment would not be terminated if she complied with the whistleblower protection provision. Even if that contract existed, Johnson cannot establish that the promise not to retaliate induced her to action "of a definite and substantial character." The only action Johnson took in reliance on the handbook was to verbally complain to the District Administrator that she felt she had too many students to comply with IEP requirements. Further, Johnson cannot establish that injustice can be avoided only by enforcement of the promise. As noted above, the record establishes that she was not terminated for making a protected complaint under the handbook. Her non-renewal arose from her refusal to sign the PIP or complete its requirements. Johnson's promissory estoppel claim therefore fails as a matter of law.

*C. Public Policy*

¶21 Finally, Johnson argues the circuit court erred by refusing to apply the public policy exception to the at-will employment doctrine. An at-will employee may sue for wrongful discharge where the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.

*Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶9, 254 Wis. 2d 347, 646 N.W.2d 365. Thus, "[a]n employer may not require an employee to violate a constitutional or statutory provision with impunity." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 573, 335 N.W.2d 834 (1983). "If an employee refuses to act in an unlawful manner, the employer would be violating public policy by terminating the employee for such behavior." *Id.* Our supreme court has also held that where the law imposes an affirmative legal obligation on an employee to take action, an employer's termination of the employee for fulfilling the legal obligation exposes the employer to a wrongful termination action. *See Hausman v. St. Croix Care Ctr.*, 214 Wis. 2d 655, 669, 571 N.W.2d 393 (1997).

¶22    Here, Johnson argues that state and federal law set forth the public policies that favor free, appropriate public education to disabled students and adequate resources for that education, including the creation and implementation of IEPs. Johnson further emphasizes the laws that prohibit discrimination against disabled students and criminalize misconduct in public office. Johnson asserts she was terminated because she complained, based on her caseload, that she would not be able to comply with her affirmative obligations under the law. According to Johnson, she was therefore put in the position of reporting and being terminated, or not reporting and violating the law. We are not persuaded.

¶23    The public policies to which Johnson cites are far too attenuated from the particular actions she took in this case. There was no actual violation of any law or policy that Johnson alleged had occurred—she alleged only that a violation *could* occur. Johnson does not allege that the District commanded her to violate public policy, nor did Johnson have an affirmative obligation imposed under law to complain about her caseload. While Johnson may have perceived

11

that her workload would impede her ability to fully implement her students' IEPs, that perception does not state a viable public policy discharge claim.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).